UNITED STATES, Appellee,

v.

Mirna RIVERA, Defendant, Appellant.

UNITED STATES, Appellant,

v.

Robert ADAMO, Defendant, Appellee.

Nos. 92–1749, 92–2167.

United States Court of Appeals,
First Circuit.

Heard Jan. 8, 1993.

Decided June 4, 1993.

John M. Cicilline, Providence, RI, for appellant, Mirna Rivera.

Margaret E. Curran, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., and Zechariah Chafee, Asst. U.S. Atty., Providence, RI, were on brief, for appellee, U.S. in No. 92–1749.

Margaret E. Curran, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., and Seymour Posner, Asst. U.S. Atty., Providence, RI, were on brief, for appellant, U.S. in No. 92–2167.

Eugene V. Mollicone with whom William A. Dimitri, Jr. and Dimitri & Dimitri, Providence, RI, were on brief, for appellee, Robert Adamo.

Before BREYER, Chief Judge,
CAMPBELL and BOWNES, Senior Circuit Judges.

BREYER, Chief Judge.

Each of these two appeals concerns the district court's power to impose a sentence that departs from the Sentencing Guidelines. The first case involves Mirna Rivera, a single mother of three small children. Ms. Rivera was convicted of carrying about a pound of cocaine from New York to Providence. She appeals her thirty-three month sentence of imprisonment. She argues that the district court would have departed downward from the minimum thirty-three month Guidelines prison term but for the court's view that it lacked the legal "authority" to depart. She says that this view is legally "incorrect," 18 U.S.C. § 3742(f)(1), and she asks us to set aside her sentence.

The second case involves a union official, Robert Adamo, who embezzled about $100,-000 from his union's Health and Welfare Fund. The district court departed downward from the fifteen to twenty-one month prison term that the Guidelines themselves would have required. Instead, the court imposed a term of probation without confinement. The court said that it was departing downward so that Mr. Adamo could continue to work and to make restitution to the Fund. The Government appeals. It argues that Adamo's circumstances are insufficiently unusual to warrant the departure.

We agree with the appellants in both cases. In our view, the district court sentencing Ms. Rivera held an unduly narrow

view of its departure powers. The district court sentencing Mr. Adamo failed to analyze the need for departure in the way that the law requires. We consider both cases in this single opinion because doing so may help to illustrate an appropriate legal analysis for "departures." We shall first set forth our view of the portion of the law here applicable; and we shall then apply that law to the two appeals.

## I

### Departures

The basic theory of the Sentencing Guidelines is a simple one. In order to lessen the degree to which different judges imposed different sentences in comparable cases, an expert Sentencing Commission would write Guidelines, applicable to most ordinary sentencing situations. See S.Rep. No. 225, 98th Cong., 2d Sess. 38, 51, 161 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3221, 3234, 3344. In an ordinary situation, the statutes, and the Guidelines themselves, would require the judge to apply the appropriate guideline—a guideline that would normally cabin, within fairly narrow limits, the judge's power to choose the length of a prison term. 18 U.S.C. § 3553(a), (b). Should the judge face a situation that was not ordinary, the judge could depart from the Guidelines sentence, provided that the judge then sets forth the reasons for departure. 18 U.S.C. § 3553(b), (c). A court of appeals would review the departure for "reasonableness." 18 U.S.C. § 3742. And, the Commission itself would collect and study both the district courts' departure determinations and the courts of appeals' decisions, thereby learning about the Guidelines' actual workings and using that knowledge to help revise or clarify the Guidelines for the future. See S.Rep. No. 225, 98th Cong., 2d Sess. 80, 151, reprinted in 1984 U.S.C.C.A.N. at 3263, 3334; U.S.S.G. Ch. I, Pt. A, intro. comment. 4(b).

This basic theory is embodied in statutory provisions and in the Guidelines themselves. We believe it important to refer to this theory in explaining our own view of the legal provisions concerning departures, and of how both district courts and courts of appeals are to apply them.

### A

### The Statute

■ The Sentencing Statute itself sets forth the basic law governing departures. It tells the sentencing court that it

> shall impose a sentence of the kind, and within the range ... established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines....

18 U.S.C. § 3553(b) (incorporating 18 U.S.C. § 3553(a)(4)) (emphasis added). The statute goes on immediately to create an exception for departures by adding that the sentencing court shall "impose" this Guidelines sentence

> unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.

18 U.S.C. § 3553(b) (emphasis added). If the sentencing court makes this finding and sentences "outside the [Guidelines] range," it must

> state in open court ... the specific reason for the imposition of a sentence different from that described [in the guidelines].

18 U.S.C. § 3553(c). The defendant may then appeal an upward departure, and the Government may appeal a downward departure. 18 U.S.C. § 3742(a), (b); United States v. Pighetti, 898 F.2d 3, 4 (1st Cir.1990) (beneficiary of departure decision lacks standing "to complain that the deviation should have been greater"). On appeal, if

> the court of appeals determines that the sentence ... is unreasonable, ... it shall state specific reasons for its conclusions and ... set aside the sentence and remand the case for further sentencing proceedings with such instructions as the court considers appropriate.

18 U.S.C. § 3742(f) (emphasis added).

■ The upshot, as we have said, is that in ordinary cases the district court must apply the Guidelines. In other cases, the court

may depart provided that it gives reasons for the departure and that the resulting sentence is "reasonable." The statute refers to those "other cases," as those where "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." But, as we shall see in a moment, in many cases this statutory limitation, as a *practical* matter, will have limited impact, because the Commission itself admits that it has not adequately considered "unusual" cases.

B

*The Guidelines*

The Guidelines deal with departures in four basic ways.

1. *Cases Outside the "Heartland."* The Introduction to the Guidelines (which the Commission calls a "Policy Statement") makes an important distinction between a "heartland case" and an "unusual case." The Introduction says that the

> Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes.

U.S.S.G. Ch. I, Pt. A, intro. comment. (4)(b). The Introduction goes on to say that when

> a court finds an atypical case, one to which a particular guideline linguistically applies, but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

*Id.* The Introduction further adds that, with a few stated exceptions,

> the Commission does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case.

*Id.*

■ The Introduction thus makes clear that (with a few exceptions) a case that falls outside the linguistically applicable guideline's "heartland" is a *candidate* for departure. It is, by definition, an "unusual case." And, the sentencing court may then go on to consider, in light of the sentencing system's purposes, *see* 18 U.S.C. § 3553(a), (and the Guidelines themselves) whether or not the "unusual" features of the case justify departure.

■ It should now be apparent why we believe the statutory language "adequately taken into consideration" sometimes has little practical importance. The statute says that the sentencing court considering a departure must ask whether the Sentencing Commission has "adequately taken into consideration" the aggravating or mitigating circumstance that seems to make a case unusual. But, the Commission itself has explicitly *said* that (with a few exceptions) it did not "adequately" take *unusual* cases "into consideration." Of course, deciding whether a case is "unusual" will sometimes prove a difficult matter (in respect to which particular facts, general experience, the Guidelines themselves, related statutes, and the general objectives of sentencing all may be relevant). But, once the court, *see* pp. 949–50, *infra,* has properly determined that a case is, indeed, "unusual," the case becomes a candidate for departure, for the Commission itself has answered the statutory "adequate consideration" question.

■ The initial version of the Guidelines, at the risk of redundancy, made this fact absolutely clear. It stated:

> The new sentencing statute permits a court to depart from a guideline-specified sentence only when it finds "an aggravating or mitigating circumstance . . . that was not adequately taken into consideration by the Sentencing Commission. . . ." *Thus, in principle, the Commission, by specifying that it had adequately considered a particular factor, could prevent a court from using it as grounds for departure. In this initial set of guidelines, however, the Commission does not so limit the courts' departure powers.*

U.S.S.G. Ch. I, Pt. A, intro. comment. (4)(b) (Oct.1987) (emphasis added) (citation omitted). In later versions of the Guidelines, the Commission eliminated the underscored language. But, since the "unusual case" statement (*i.e.,* the statement that the "Commis-

sion does not intend to limit the kinds of factors ... that could constitute grounds for departure in an unusual case") expresses the same thought, the excision presumably reflected an intent to avoid redundancy, not to change the meaning of the section. Indeed, the Commission has not suggested any intent to change its meaning. *See* U.S.S.G.App. C, amend. 307 (Nov.1990) ("language concerning what the Commission, in principle, might have done is deleted as unnecessary, but no substantive change is made"). Thus, (with a few exceptions) the law tells the judge, considering departure, to ask basically, "Does this case fall within the 'heartland,' or is it an unusual case?"

2. *Encouraged Departures.* In certain circumstances, the Guidelines offer the district court, which is considering whether to depart, special assistance, by specifically encouraging departures. Part 5K lists a host of considerations that may take a particular case outside the "heartland" of any individual guideline and, in doing so, may warrant a departure. *See* U.S.S.G. § 5K2.0, p.s. The individual guidelines do not take account, for example, of an offender's "diminished capacity," which circumstance, in the Commission's view would normally warrant a downward departure. U.S.S.G. § 5K2.13, p.s. Nor do certain guidelines (say, immigration offense guidelines) take account of, say, use of a gun, which circumstance would remove the situation (the immigration offense) from that guideline's "heartland" and would normally warrant an upward departure. U.S.S.G. §§ 5K2.0, 5K2.6, p.s. Specific individual guidelines may also encourage departures. The guideline governing transportation of persons for prohibited sexual conduct, for example, recommends a downward departure of eight levels where the offense involves neither profit nor force. U.S.S.G. § 2G1.1, comment. (n. 1). A sentencing court facing such non-heartland circumstances can feel confident, because of this encouragement, that a departure would not be "unreasonable." 18 U.S.C. § 3742(f).

3. *Discouraged Departures.* The Guidelines sometimes discourage departures. Part 5H, for example, lists various "specific offender" characteristics, such as age, edu- cation, employment record, family ties and responsibilities, mental and physical conditions, and various good works. The Guidelines say that these features are "not *ordinarily* relevant" in determining departures. U.S.S.G. Ch. 5, Pt. H (emphasis added). The Commission thereby recognizes that (1) the individual guidelines (with a few exceptions) do not provide adjustments reflecting such circumstances, yet (2) this fact alone does *not* make such circumstances automatically sufficient to transform a "heartland" case into an "unusual" case outside the heartland.

■ At the same time, the Commission recognizes that such circumstances *could* remove a case from the heartland, but only if they are present in a manner that is unusual or special, rather than "ordinary." *See United States v. Merritt*, 988 F.2d 1298, 1312 (2d Cir.1993). It may not be unusual, for example, to find that a convicted drug offender is a single mother with family responsibilities, but, at some point, the nature and magnitude of family responsibilities (many children? with handicaps? no money? no place for children to go?) may transform the "ordinary" case of such circumstances into a case that is not at all ordinary.

■ Thus, a sentencing court, considering whether or not the presence of these "discouraged" factors warrants departure, must ask whether the factors themselves are present in unusual kind or degree. The Commission, in stating that those factors do not "ordinarily" take a case outside the heartland, discourages, but does not absolutely forbid, their use. *See, e.g., Merritt*, 988 F.2d at 1312; *United States v. Deigert*, 916 F.2d 916, 918–19 (4th Cir.1990). *But see United States v. Thomas*, 930 F.2d 526, 529–30 (7th Cir.) (forbidding departures based on family responsibilities, except where probation or fines are at issue), *cert. denied*, —— U.S. ——, 112 S.Ct. 171, 116 L.Ed.2d 134 (1991).

■ 4. *Forbidden Departures.* The Commission has made several explicit exceptions to the basic principle that a sentencing court can consider any "unusual case" (any case outside the heartland) as a candidate for departure. The Guidelines state that a sentencing court "cannot take into account as

grounds for departure" race, sex, national origin, creed, religion, and socio-economic status. U.S.S.G. § 5H1.10, p.s. The Guidelines also state that "lack of guidance as a youth" cannot justify departure, U.S.S.G. § 5H1.12, p.s., that drug or alcohol abuse is not a reason for imposing a sentence below the Guidelines range, U.S.S.G. § 5H1.4, p.s., and that personal financial difficulties and economic pressure upon a trade or business do not warrant a decrease in sentence. U.S.S.G. § 5K2.12, p.s. *cf. Williams v. United States,* — U.S. —, —, 112 S.Ct. 1112, 1117, 117 L.Ed.2d 341 (1992) (under U.S.S.G. § 4A1.3, p.s. prior arrest record cannot provide reliable evidence of prior criminal conduct warranting upward departure). Thus, even if these factors make a case "unusual," taking it outside an individual guideline's heartland, the sentencing court is not free to consider departing. But, with these nine exceptions, the sentencing court is free to consider, in an unusual case, whether or not the factors that make it unusual (which remove it from the heartland) are present in sufficient kind or degree to warrant a departure. *See* U.S.S.G. Ch. I, Pt. A, intro. comment. 4(b). The court retains this freedom to depart whether such departure is encouraged, discouraged, or unconsidered by the Guidelines.

### C

*The Sentencing Court's Departure Decision*

 Given the statutory provisions, and the relevant Guidelines statements, we suggest (but we do not require) that, as an initial matter, a sentencing court considering departure analyze the case along the following lines:

1) What features of this case, potentially, take it outside the Guidelines' "heartland" and make of it a special, or unusual, case?

2) Has the Commission forbidden departures based on those features?

3) If not, has the Commission encouraged departures based on those features?

4) If not, has the Commission discouraged departures based on those features?

If no special features are present, or if special features are also "forbidden" features, then the sentencing court, in all likelihood, simply would apply the relevant guidelines. If the special features are "encouraged" features, the court would likely depart, sentencing in accordance with the Guidelines' suggestions. If the special features are "discouraged" features, the court would go on to decide whether the case is nonetheless not "ordinary," *i.e.,* whether the case differs from the ordinary case in which those features are present. If the case is ordinary, the court would not depart. If it is not ordinary, the court would go on to consider departure.

 Of course, this analysis, by itself, does not help the district court decide what to do in situations where the Guidelines do not expressly forbid, encourage, or discourage, departures. The Guidelines themselves recognize that the "[c]ircumstances that may warrant departure from the guidelines ... cannot, by their very nature, be comprehensively listed and analyzed in advance." U.S.S.G. § 5K2.0, p.s. When such unforeseen circumstances arise, the district court will decide whether to depart (and, if so, how much to depart) by examining the "unusual" nature of these circumstances and making a judgment about what is appropriate. The structure and theory of both relevant individual guidelines and the Guidelines taken as a whole may inform that judgment. The sentencing statute also lists generally relevant sentencing factors, including the "nature and circumstances of the offense," the "history and characteristics of the defendant," and the basic purposes of sentencing, namely, just punishment, deterrence, incapacitation, and rehabilitation. 18 U.S.C. § 3553(a); *United States v. Merritt,* 988 F.2d at 1307, 1312 (citing Daniel J. Freed, *Federal Sentencing in the Wake of Guidelines: Unacceptable Limits on the Discretion of Sentencers,* 101 Yale L.J. 1681, 1700, 1730–31 (1992)). Ultimately, however, the Guidelines cannot dictate how courts should sentence in such special, unusual or other-than-ordinary circumstances. And, that is as it should be. As we have said, *see* p. 946, *supra,* the very theory of the Guidelines system is that when courts, drawing upon experience and informed judgment in such cases, decide to depart, they will explain their departures. The courts of

appeals, and the Sentencing Commission, will examine, and learn from, those reasons. And, the resulting knowledge will help the Commission to change, to refine, and to improve, the Guidelines themselves. That is the theory of partnership that the Guidelines embody.

## D

### Review on Appeal

■ If the district court decides to depart, the defendant may appeal (an upward departure) or the Government may appeal (a downward departure). 18 U.S.C. § 3742(a), (b); *see also United States v. Pighetti*, 898 F.2d at 4. The statute then provides the appellate court with two important instructions. First, the court of appeals must decide if the resulting sentence is "unreasonable, having regard for" the sentencing court's reasons and the statute's general sentencing factors. 18 U.S.C. § 3742(e)(3). Second, the court of appeals must (as it ordinarily does) give "specific reasons" for its decision. 18 U.S.C. § 3742(f)(2). These two instructions, taken together, help assure that the courts of appeals, with their more distant, yet broader, perspective, will also play an important indirect (as well as the obvious direct) role in the further development of Guidelines. They play this "indirect role" as the Commission examines the courts of appeals' decisions and reacts, through revision, or reiteration, of the Guidelines.

The result is a partnership in which each partner enjoys a different institutional strength. The district court may best understand the relation of the Guidelines to case-specific, detailed facts. Its experience permits it directly to form a judgment as to when certain kinds of circumstances seem better handled by judicial discretion and how courts ought to exercise that discretion. At the other end of the spectrum, the Sentencing Commission, by gathering information produced by many individual courts, can view the sentencing process as a whole, developing a broad perspective on sentencing, which will help it produce more consistent sentencing results among similarly situated offenders sentenced by different courts. The courts of appeals see sentences from an intermediate vantage point. They devote considerable time and effort to a district court's determination in a particular case, while, at the same time, placing that case within a broader perspective of sentencing law.

■ Recognizing this relationship, we have held that appellate courts must recognize a degree of district court autonomy when they review certain aspects of the departure decision. In *United States v. Diaz–Villafane*, 874 F.2d 43 (1st Cir.) *cert. denied*, 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989), we pointed out that appellate review of a decision to depart may involve three subsidiary questions: 1) review of the departure-related circumstances to determine "whether or not" they "are of a kind or degree that they may appropriately be relied upon to justify departure;" 2) review of the evidence to see if it supports the departure-related findings of fact; and 3) review of the "record support" for "the direction and degree" of departure. *Id.* at 49. We held that in the second, and the third, instance, an appeals court must allow the district court a degree of "leeway." Review of factfinding is for "clear error." *Id.* Review of departure "direction and degree" will take place with "full awareness of, and respect for" the sentencing court's "superior 'feel'" for the case." *Id.* at 50; *see also* Bruce M. Selya & Matthew R. Kipp, *An Examination of Emerging Departure Jurisprudence Under the Federal Sentencing Guidelines*, 67 Notre Dame L.Rev. 1, 39–40 (1991).

We also stated, however, that in respect to the first matter ("whether or not" the circumstances "are of a kind or degree" to warrant a departure), our appellate review was "essentially plenary." *Diaz–Villafane* 874 F.2d at 49. This phrase suggested review that provides no "leeway" for the district court. We now consider it necessary to elaborate our meaning and to modify, somewhat, our application of *Diaz–Villafane* in later cases. *See United States v. Carr*, 932 F.2d 67, 72 (1st Cir.), *cert. denied*, — U.S. ——, 112 S.Ct. 112, 116 L.Ed.2d 82 (1991); *United States v. Pozzy*, 902 F.2d 133, 138 (1st Cir.), *cert. denied*, 498 U.S. 943, 111 S.Ct. 353, 112 L.Ed.2d 316 (1990). (Through

circulation of a draft opinion, we have obtained approval of all active judges for doing so. *See, e.g., Trailer Marine Transport Corp. v. Rivera Vazquez,* 977 F.2d 1, 9 n. 5 (1st Cir.1992)). Our elaboration, and modification, consists of distinguishing certain decisions in this category where review should take place without "leeway," from others where, despite the technically legal nature of the question, we nonetheless should review with "full ... respect for" the sentencing court's "superior 'feel' for the case." *Diaz–Villafane,* 874 F.2d at 50. We recognize that application of our elaboration and modification to earlier decided cases might have meant different results.

■ Plenary review is appropriate where the question on review is simply whether or not the allegedly special circumstances (i.e., the reasons for departure) are of the "kind" that the Guidelines, *in principle,* permit the sentencing court to consider at all. As we have previously pointed out, departures for some reasons are "forbidden," *see* pp. 948–49, *supra,* and departures for certain other reasons are "discouraged" unless the case is out of the ordinary, *see* p. 948, *supra.* Were a district court (1) to try to depart for a "forbidden" reason, or were it (2) to try to depart for a "discouraged" reason *without recognizing that it must explain how the case (compared to other cases· where the reason is present) is special,* its departure would not be lawful. The district court has no special expertise in deciding whether a factor is "forbidden" or "discouraged." Hence, there is no reason to review such a decision with any "leeway" or "deference."

■ Plenary review is also appropriate where the appellate court, in deciding whether the allegedly special circumstances are of a "kind" that permits departure, will have to perform the "quintessentially legal" function, *see Diaz–Villafane,* 874 F.2d at 49, of interpreting a set of words, those of an individual guideline, in light of their intention or purpose, in order to identify the nature of the guideline's "heartland" (to see if the allegedly special circumstance falls within it). Is the "child pornography" guideline, for example, aimed only at child pornography consumers who are also child molesters, so that a pur-

chaser who is not also a molester falls outside its "heartland?" *See United States v. Studley,* 907 F.2d 254, 258 (1st Cir:1990) (the fact that recipient of child pornography was not also a child molester does not make the case unusual nor remove it from the heartland of. the child pornography guideline); *United States v. Deane,* 914 F.2d 11, 14 (1st Cir.1990) (following *Studley*). Here, again, the district court has no *special* competence in performing this kind of classical textual analysis. Hence, a reviewing court, deciding whether the district court has "incorrectly applied" a guideline, 18 U.S.C. § 3742(f)(1); *Williams v. United States,* —— U.S. ——, ——, 112 S.Ct. 1112, 1120, 117 L.Ed.2d 341 (1992), need not give the district court's answer to a question involving this kind of analysis any special weight.

■ In many other instances, not anticipated by *Diaz–Villafane,* the district court's decision that circumstances are of a "kind," or "degree," that warrant departure will *not* involve a "quintessentially legal" interpretation of the words of a guideline, but rather will amount to a judgment about whether the given circumstances, as seen from the district court's unique vantage point, are usual or unusual, ordinary or not ordinary, and to what extent. A district court may well have a special competence in making this kind of determination, because it may have a better "feel" for the unique circumstances of the particular case before it. A district court is also likely to have seen more *ordinary* Guidelines cases, for appellate courts hear only the comparatively few cases that counsel believe present a colorable appeal. *See The Federal Sentencing Guidelines: A Report on the Operations of the Guidelines System* 49, 245 (December 1991) (85% of Guidelines sentences not appealed). To ignore the district court's special competence—about the "ordinariness" or "unusualness" of a particular case—would risk depriving the Sentencing Commission of an important source of information, namely, the reactions of the trial judge to the fact-specific circumstances of the case, which reactions, reduced to written reasons for departure, can help the Commission determine whether, and how, Guidelines revision should take place. *See* p. 946, *su-*

*pra;* U.S.S.G. Ch. I, Pt. A intro. comment. (4)(b). Thus, appellate courts should review the district court's determination of "unusualness" with "full awareness of, and respect for, the trier's superior 'feel' for the case," *Diaz–Villafane,* 874 F.2d at 50, not with the understanding that review is "plenary." *Contra United States v. Carr,* 932 F.2d at 72; *United States v. Pozzy,* 902 F.2d at 138.

■ As we have said, *Diaz–Villafane* mandated appellate court "respect" for sentencing court determinations of fact and of "direction and degree." We now extend that "respect" to sentencing court determinations of whether (and the extent to which) given circumstances make a case "unusual" or "not ordinary." We believe this view consistent with the Supreme Court's recent statement that,

> except to the extent specifically directed by statute, "it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence."

*Williams v. United States,* —— U.S. at ——, 112 S.Ct. at 1121 (quoting *Solem v. Helm,* 463 U.S. 277, 290 n. 16, 103 S.Ct. 3001, 3009 n. 16, 77 L.Ed.2d 637 (1983)); *see also* William W. Wilkins, Jr., *Sentencing Reform and Appellate Review,* 46 Wash. & Lee L.Rev. 429, 443 (1989) (it is not "appropriate for the appellate court to simply substitute its judgment *de novo* for that of the sentencing court"). Our view is also consistent with Congress' instruction that appeals courts "shall affirm" reasonable departures. 18 U.S.C. § 3742(f)(2)–(3). And, it is consistent with appellate court efforts generally to conduct judicial review in light of comparative institutional competence. *Cf. United States v. Wright,* 873 F.2d 437, 444 (1st Cir.1989) (deferential review under Guidelines where issue is "one that is founded 'on the application of the fact-finding tribunal's experience with the mainsprings of human conduct'") (quoting *United States v. McConney,* 728 F.2d 1195, 1202 (9th Cir.), *cert. denied* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984)) (citation omitted); *Mayburg v. Secretary of Health & Human Servs.,* 740 F.2d 100, 105–07 (1st Cir.1984); *see also INS v. Cardoza–Fonseca,* 480 U.S. 421, 445–48, 107 S.Ct.

1207, 1220–22, 94 L.Ed.2d 434 (1987) (citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, n. 9, 104 S.Ct. 2778, 2781, n. 9, 81 L.Ed.2d 694 (1984)).

## II

### *Applying the Analysis*

We now apply our "departure" analysis to the circumstances of the two cases before us, the appeal of Ms. Mirna Rivera, and that of Mr. Robert Adamo.

### A

### *Mirna Rivera*

■ For purposes of this appeal, we take Ms. Rivera to have transported about one pound of cocaine, from New York to Providence, with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B). The Guidelines provide a sentence of 33 to 41 months imprisonment for a first time offender who has engaged in this conduct. *See* U.S.S.G. § 2D1.1(a)(3), (c)(10) (base offense level of 24); U.S.S.G. § 3B1.2(a) (reduction of 4 points for minimal participation); U.S.S.G. Ch. 5, Pt. A (sentencing table). Ms. Rivera argued to the district court that it should depart downward from this Guidelines sentence for the following reasons:

1) she has three small children, ages three, five, and six, who need a mother's care;

2) she lives solely on welfare, receiving no financial aid from her former husband;

3) she has virtually no contact with any other family member (except for a sister, with five children, also on welfare);

4) she has never before engaged in any criminal activity; and,

5) she committed this single offense because of an unwise wish to obtain money for Christmas presents for her children.

The district court decided not to depart. Rivera claims that this decision reflects the court's incorrect belief that it lacked the legal authority to depart. And, she asks us to order a new proceeding. *See United States v. Castiello,* 915 F.2d 1, 5–6 (1st Cir.1990) (new proceeding needed where district court

wrongly thought it lacked legal power to depart, but not where it simply chose not to exercise this authority), *cert. denied,* 498 U.S. 1068, 111 S.Ct. 787, 112 L.Ed.2d 849 (1991).

After reviewing the record of the sentencing proceeding, we conclude that Rivera is correct. The district court's analysis of the nature of its power to depart is not consistent with the view of departures that we set forth in this opinion. We recognize a difference between "forbidden departures," *see* pp. 948–49, *supra,* and "discouraged departures," *see* p. 948, *supra.* And, we believe that the district court did not realize that it had the legal power to consider departure, where departure is discouraged (but not forbidden), if it finds features of the case that show it is not ordinary. *See* p. 948, *supra.*

At the sentencing hearing, the district court said:

> With respect to Defendant's argument that the Defendant's family situation, economic situation, warrants a departure, I must say that the guidelines are drawn to apply to everyone in exactly the same way, that it is clear from the guidelines that the economic situation and the family situation of the Defendant is not a consideration. There are those who certainly would disagree with that, but that is the principle that is embodied in the guidelines. *They are age blind,* they are *sex blind,* they are *blind to family circumstances,* and can result in their application in a certain amount of cruelty. But, that isn't a basis for making a departure. *It's a situation where somebody tries to draw a straight line that applies to every situation that can possibly arise and this Court is without discretion to take what might well be thought by most people, at least, legitimate concerns into consideration.* Simply put, *I can't do that because the guidelines do not permit me to do that.* So that Defendant's objection or request to make a downward departure is denied....

> Your Counsel says that a court somewhere observed that these guidelines are not a straightjacket for a District Court. Well, I don't agree with that. Here is a circumstance where I'm satisfied that the reason

you did this was to buy toys for your children at Christmas. It was a serious mistake. The pre-sentence report says this:

> There is no information suggesting that Ms. Rivera had any previous participation in a similar type criminal activity. The Defendant's lifestyle is not indicative of that of a drug dealer who has profited from ongoing criminal activity. Rather she appears destitute, relying on public assistance to support herself and her children.

> ... *If I had the authority to do it, I would not impose the sentence that I am about to impose.* I would impose a lesser sentence because I think that these guidelines simply are unrealistic when applied to real life situations like this. *They may work in many circumstances, but they certainly don't work here.*

(Emphasis added).

In these statements, the court repeatedly said that it lacked the legal power to depart; it characterized the case before it as different from the "many circumstances" where the Guidelines might work; it added that it would depart if it could; it set forth several circumstances that might make the case a special one; and it described as identical ("sex blind" and "blind to family circumstances") guidelines that, in fact, differ significantly, the former involving a "forbidden" departure, and the latter a "discouraged" departure. *Compare* U.S.S.G. § 5H1.10, p.s. *with* § 5H1.6, p.s.; *compare also* pp. 948–49, *supra with* p. 948, *supra.* Taken together, these features of the case warrant a new sentencing proceeding, conducted with the district court fully aware of its power to depart in "unusual cases" and where family circumstances are out of the "ordinary."

■ Of course, we should not (and would not) order a new proceeding were the proceeding pointless, *i.e.,* were there no significant possibility that the facts and circumstances would permit the district court lawfully to order a departure. *See United States v. Rushby,* 936 F.2d 41, 42 (1st Cir. 1991). Yet, we cannot say this is so. We

have examined the case law and found several cases permitting departure in similar, or even less sympathetic, circumstances. *See United States v. Johnson*, 964 F.2d 124, 128–30 (2d Cir.1992) (sole responsibility for raising four children); *United States v. Alba*, 933 F.2d 1117, 1122 (2d Cir.1991) (twelve-year marriage, two children, living with disabled, dependent father and grandmother); *United States v. Pena*, 930 F.2d 1486, 1494–95 (10th Cir.1991) (single parent of infant and sole supporter of sixteen-year-old daughter and daughter's infant); *United States v. Big Crow*, 898 F.2d 1326, 1331–32 (8th Cir.1990) (solid family and community ties and "consistent efforts to lead a decent life in [the] difficult environment" of an Indian reservation). *See also United States v. Gaskill*, 991 F.2d 82 (3d Cir.1993) (defendant's responsibilities for mentally ill wife might justify departure).

We have also found many cases forbidding departures for reasons related to family responsibilities, but they seem to involve circumstances less compelling than those before us. *See United States v. Chestna*, 962 F.2d 103, 107 (1st Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 334, 121 L.Ed.2d 251 (1992) (defendant was single mother of four children); *United States v. Mogel*, 956 F.2d 1555, 1565 (11th Cir.) (defendant supported two minor children and live-in mother), *cert. denied*, —— U.S. ——, 113 S.Ct. 167, 121 L.Ed.2d 115 (1992); *United States v. Cacho*, 951 F.2d 308, 311 (11th Cir.1992) (defendant had four small children); *United States v. Berlier*, 948 F.2d 1093, 1096 (9th Cir.1991) (defendant sought to keep family together); *United States v. Carr*, 932 F.2d 67, 72 (1st Cir.) (codefendants were parents of young child), *cert. denied*, —— U.S. ——, 112 S.Ct. 112, 116 L.Ed.2d 82 (1991); *United States v. Shoupe*, 929 F.2d 116, 121 (3d Cir.) (defendant was father who regularly made child support payments and frequently spoke with young son living with ex-wife), *cert. denied*, —— U.S. ——, 112 S.Ct. 382, 116 L.Ed.2d 333 (1991); *United States v. Brand*, 907 F.2d 31, 33 (4th Cir.) (defendant was sole custodial parent of two children), *cert. denied*, 498 U.S. 1014, 111 S.Ct. 585, 112 L.Ed.2d 590 (1990); *United States v. Neil*, 903 F.2d 564, 566 (8th Cir.1990) (defendant

had stable family life); *United States v. Pozzy*, 902 F.2d 133, 139 (1st Cir.) (defendant pregnant and husband imprisoned), *cert. denied*, 498 U.S. 943, 111 S.Ct. 353, 112 L.Ed.2d 316 (1990); *United States v. Brewer*, 899 F.2d 503, 508–09 (6th Cir.) (defendant was mother of young children), *cert. denied*, 498 U.S. 844, 111 S.Ct. 127, 112 L.Ed.2d 95 (1990).

The upshot is a difficult departure decision. On the one hand lie a host of quite special circumstances (though many are of the "discouraged" sort), and on the other hand lies the simple fact that Ms. Mirna Rivera did transport a pound of cocaine from New York to Providence. This is the kind of case in which, if the district court departs, its informed views as to why the case is special would seem especially useful and would warrant appellate court "respect." *See* pp. 951–52, *supra.*

We remand the case for further proceedings.

## B

### Robert Adamo

■ Mr. Adamo was convicted of embezzling about $100,000 belonging to the union Health and Welfare Fund of which he was a fiduciary, in violation of 18 U.S.C. § 664. He accepted responsibility for the crime, U.S.S.G. § 3E1.1. It was his first offense. The Guidelines provided a minimum prison term of fifteen months. *See* U.S.S.G. §§ 2E5.2, 2B1.1, 3B1.3 (base offense level of 4; increase of 8 points for amount of loss; 2 level enhancement for more than minimal planning; 2 level enhancement for fiduciary); U.S.S.G. Ch. 5, Pt. A (sentencing table). The district court, departing downward from the Guidelines, sentenced Mr. Adamo to probation alone, without any imprisonment.

The court gave the following reasons for its downward departure:

When I look at these cases of sentencing, the first thing I ask myself is, "What sentence would I impose if there were no guidelines?" That's what I did for more than 20 years. And then I ask myself, "What's a just sentence in these circum-

stances? Am I going to be limited by these artificial guidelines made by people who have no idea of what kind of a case I'm going to have to decide?" No two cases are the same....

So that's where justice is in this case, having restitution made to this Health & Welfare Fund. If I send this defendant to prison I think it's foreordained that restitution will not be made. It may be made in some respect, but I'm sure the defendant would lose both his jobs and would find it very difficult to have employment which would allow him to make restitution. And a time in prison would serve no useful purpose in this case. The only factor in sentencing which would be accomplished is punishment, but the defendant has been punished just by being here—just being here and what he's gone through in the last 6 months, and the notoriety of this. So, imprisonment serves no useful purpose in this case. It certainly isn't a matter of deterrence. I'm sure the defendant will never do anything like this again.

Here is a man who has lived an exemplary life, he's worked two jobs to take care of his family. His wife has worked, and although they were making in the range of $70,000 a year, the problem of educating two children came up. It's a problem that everyone faces. This is where the error of judgment comes in. He took this money, not out of greed, not out of desire to own a fancy car or a palatial home and a boat, but to educate his children. He didn't think about the other alternatives. His daughter wanted to go to an expensive private school, instead of going to a local state school of some sort, and he thought that's what she should have. He didn't consider loans and other types of programs. This money was available, he took it—a terrible mistake. But that's the only mistake that he seems to have made, and I just don't think he should spend time in prison because of this one mistake.

I want restitution made, so I'm going to exercise my best judgment in these circumstances. My best judgment is to have as long a term of probation as possible so that restitution can be made with the guidance of the probation office.

So, I'm going to depart downward and impose a term of probation of 5 years. That's the maximum that I can impose. And one of the conditions of probation will be, and is, that the defendant shall pay restitution in the amount of $91,125.62 to the Health & Welfare Fund of the Building Service Employees International Union, AFL–CIO Local 334.

The court's explication of its reasons is useful, for it produces understanding and permits evaluation, both by appellate courts and by the Commission. We nonetheless believe the analysis does not permit the departure before us.

 First, we believe (deciding the question as a pure matter of law, *see* pp. 951–52, *supra*) that the embezzlement guidelines encompass, within their "heartland," embezzlement accompanied by *normal* restitution needs and practicalities (*i.e.*, the simple facts that restitution is desirable and that a prison term will make restitution harder to achieve). It would seem obvious, and no one denies, that the embezzlement guidelines are written for ordinary cases of embezzlement, that restitution is called for in many such cases, and that prison terms often make restitution somewhat more difficult to achieve. Moreover, the embezzlement guideline reflects the Commission's intent to equalize punishments for "white collar" and "blue collar" crime. *See* United States Sentencing Commission, *Supplementary Report on the Initial Sentencing Guidelines and Policy Statements* 18 (1987); *Hearings Before the Senate Comm. on the Judiciary*, 100th Cong., 1st Sess. 54–55 (October 22, 1987). Yet, as the Sixth Circuit has pointed out,

> a rule permitting greater leniency in sentencing in those cases in which restitution is at issue *and* is a meaningful possibility (i.e., generally white collar crimes) would ... nurture the unfortunate practice of disparate sentencing based on socio-economic status, which the guidelines were intended to supplant.

*United States v. Harpst*, 949 F.2d 860, 863 (6th Cir.1991) (citing U.S.S.G. § 5H1.10, p.s. (socio-economic status not relevant in deter-

mination of sentence)). Further, the district court itself, stating that it did not wish "to be limited by these artificial guidelines," and that "no two cases are alike," seemed to disregard, rather than to deny, the scope of the embezzlement guideline. For these reasons, we join the Fourth and Sixth Circuits, in holding that *ordinary* restitution circumstances of this sort do not fall outside the embezzlement guideline's "heartland," and therefore do not warrant a downward departure. *See Harpst,* 949 F.2d at 863; *United States v. Bolden,* 889 F.2d 1336, 1340 (4th Cir.1989).

Second, we recognize that a *special* need of a victim for restitution, and the surrounding practicalities, might, in an unusual case, justify a departure. But, we cannot review a district court determination to that effect here, for the district court made no such determination. (Although, had it done so, we would have treated its determination with "respect." *See* pp. 951–52, *supra.*) We mention this fact because the defendant has pointed to one unusual feature of the case. The record before us contains a suggestion that Mr. Adamo could keep his job (and therefore remain able to make restitution) were his prison term only one year, but he could not keep his job (and thus would lose his ability to make restitution) were he sentenced to the Guidelines prison term of one year and three months. We can imagine an argument for departure resting upon a strong need for restitution, an important practical advantage to the lesser sentence, and a departure limited to three months.

We are not urging such a departure or saying that we would eventually find it lawful. We mention the special circumstance to underscore the need for reasoned departure analysis, sensitive to the way in which the Guidelines seek to structure departure decisions and to the role that such departures, and their accompanying reasons, can play in the continued development of the Sentencing Guidelines. We have explained why the district court's analysis, about how the features of a case make it unusual, can help both reviewing courts and the Commission itself. *See* pp. 946, 950, *supra.* The district court, in Mr. Adamo's case, may wish to conduct such an analysis in light of the special features of the case to which the defendant has pointed.

We therefore remand this case for new sentencing proceedings.

*The sentences in both cases are vacated and the cases are remanded to the district court for resentencing.*

*So ordered.*