USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1089 UNITED STATES OF AMERICA, Appellant, v. JOSEPH SCLAMO, JR., Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Robert E. Keeton, U.S. District Judge] ___________________ ____________________ Before Boudin, Circuit Judge, _____________ Coffin, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Brien T. O'Connor, Assistant United States Attorney, with whom A. __________________ __ John Pappalardo, United States Attorney, was on brief for appellant. _______________ James R. Lemire for appellee. _______________ ____________________ July 7, 1993 ____________________ COFFIN, Senior Circuit Judge. This is a governmental appeal ____________________ from a sentence in which the district court departed downward from the Sentencing Guidelines. The court determined that defendant's family situation revealed an aggravating circumstance making this an "unusual case" not contemplated by the Guidelines. Applying the modified standard of review for such cases recently announced in United States v. Rivera, Nos. 92-1749, -2167, slip. _____________ ______ op. (1st Cir. June 4, 1993), we affirm. Defendant Joseph Sclamo, Jr. was arrested for attempting to deliver nine and one-half ounces of cocaine to undercover agents.1 He pled guilty to a single count of possession with intent to distribute, in violation of 21 U.S.C. 841(a)(1). Under the Guidelines, Sclamo's offense level was 17, and his criminal history category was II. The district court, however, treated Sclamo's criminal history category as I because it considered the higher category to overrepresent the severity of defendant's criminal history. The government recommended a 28- month sentence, with 36 months of supervised release, and an assessment of $50. Sclamo requested a downward departure based on his domestic situation. For some three years, he had been living with a woman and her two children and had developed a special and crucially ____________________ 1 Sclamo's arrest stemmed from his involvement in a DEA operation targeting his father. The father was charged with two counts of drug offenses, to which he pled guilty, and was sentenced with defendant. The father received a sentence of 54 months of imprisonment, 36 months of supervised release, and an assessment of $100. -2- important relationship with the twelve-year-old son, James. Sclamo urged that his presence at home was vital to James, who was in need of his continuing companionship and guidance. Two letters from James's psychologist were submitted with Sclamo's motion. According to the first letter, written in April, 1992, since age 5, James continually had been abused physically by his alcoholic biological father.2 James began to display aggressive and disruptive behavior at home and in school and was placed in a behavior disorder class. Eventually, he was diagnosed as possessing "attention deficit hyperactivity disorder" and was referred to the psychologist for individual psychotherapy on a weekly outreach basis to help him develop "more effective coping skills." James's mother divorced his father in 1989. In the same year Sclamo began to live with James's family. The psychologist saw Sclamo weekly, giving him and James's mother instruction in parenting skills and behavior modification techniques. The psychologist praised Sclamo as "very supportive, concerned, and mature in his judgement and follow through." The psychologist stated that James now views Sclamo as his stepfather, with whom he has developed a "warm and trusting relationship . . . resulting in a dramatic reduction in aggressive acting out," an absence of school suspensions, and improved grades. ____________________ 2 James's father eventually was subjected to a restraining order and then given a two-year suspended sentence for abuse. -3- The psychologist concluded that Sclamo played a major positive role in James's therapy and that his continued presence was "necessary for James's increasing progress." The psychologist warned that Sclamo's "removal from the family would rob all members of a critical source of affection and positive care and clinically could trigger a major regression in James's stability and emotional development." Six months later, a month before the sentencing hearing, the psychologist reported in a second letter that James's progress both at home and at school was continuing. James was now in a "main stream class." The psychologist credited Sclamo's "ongoing and persistent efforts . . . to set clear and firm limits with James." Noting that Sclamo "has played a tremendous role in James's progress and continues to be the only available resource for positive male bonding," the psychologist recommended that defendant be allowed to continue to live at home, where he could serve as a "positive father surrogate for this 12 year old boy who is most needy for continued positive guidance and companionship to insure appropriate maturational development." Based on this information, the court concluded that a downward departure was appropriate. It recognized "that ordinarily family circumstances do not constitute a basis for downward departure" but felt that precedents in which courts have departed downward "are very much like this one in which there is evidence of an exceptional kind of relationship and an exceptional risk of harm to a child if that relationship is -4- broken." Tr. at 22-23. The court further credited the two reports from the psychologist as constituting a very compelling set of evidence about a personal relationship that I don't think there's any reason to believe arose with any purpose of escaping criminal responsibility but has occurred independently of that, and it is, I think, a circumstance beyond in degree and nature those that were taken into account in the guidelines. Id. at 22. It accordingly sentenced Sclamo to three years' ___ probation, with confinement at home for six months, subject to permission from the Chief Probation Officer to leave home for work, shopping, and medical attention. On appeal, the government contends that family relationships are not a basis for departure. It notes that imprisonment necessarily disrupts such relationships and that the sentencing guidelines provide that "[f]amily ties and responsibilities . . . are not ordinarily relevant" in determining whether departure is appropriate. See USSG 5H1.6. The government further cites a ___ number of cases in which this court has refused to allow downward departures based on family circumstances. See, e.g., United ___ ____ ______ States v. Carr, 932 F.2d 67, 72 (1st Cir. 1991). ______ ____ The government also alleges that, even if departure is permitted based on family ties, Sclamo's situation is not sufficiently compelling to warrant leniency. The government points out that Sclamo is not James's biological father and that their relationship has not been longstanding. Additionally, it urges that defendant's involvement in distributing cocaine in the -5- fall of 1989 justified the recommended sentence of 28 months' incarceration. The resolution of this appeal is governed by our recent pronouncements in United States v. Rivera. As Rivera makes _____________ ______ ______ clear, the Guidelines say only that family circumstances do not ordinarily warrant departure. See slip op. at 12 (citing ___ U.S.S.G. Ch. 5, Pt. H). Thus, while discouraging departures on this ground, the Guidelines recognize that "special, unusual or other-than-ordinary circumstances," id. at 16, may be considered ___ as a basis for departure. Indeed, our earlier cases do not hold that district courts lack authority to depart on this ground but merely illustrate circumstances not sufficiently extraordinary to warrant departure. See, e.g., United States v. Rushby, 936 F.2d ___ ____ _____________ ______ 41, 43 (1st Cir. 1991). We briefly recapitulate the approach Rivera suggests when a ______ departure from the Guidelines is requested. The district court first should ask: "What features of this case, potentially, take it outside the Guidelines' `heartland' and make of it a special, or unusual, case?" Rivera, slip op. at 15. In cases like this, ______ where the special features are discouraged, the court should "go on to decide whether the case is nonetheless not `ordinary,' i.e., whether the case differs from the ordinary case in which ____ those features are present." Id. If the case is not ordinary, ___ the court then may consider departure, deriving whatever guidance it can from the Guidelines, but, ultimately, "drawing upon experience and informed judgment," id. at 17. If the court ___ -6- decides to depart, "it must explain how the case (compared to other cases where the reason is present) is special. . . ." Id. ___ at 21 (emphasis omitted). As for our role in reviewing such departure decisions, Rivera modified our prescriptions in United States v. Diaz- ______ ______________ _____ Villafane, 874 F.2d 43 (1st Cir. 1989). In Diaz-Villafane, we _________ ______________ said that review of the district judge's determination that circumstances were "of a kind or degree that they may appropriately be relied upon to justify departure" was "essentially plenary," id. at 49. Following Rivera, however, we ___ ______ now "review the district court's determination of unusualness with full awareness of, and respect for, the trier's superior feel for the case, . . . not with the understanding that review is plenary." Rivera, slip op. at 23-24 (quoting Diaz-Villafane, ______ ______________ 874 F.2d at 50) (internal quotation marks omitted). With this background and without repeating the essential facts in the two reports credited by the district court, we see a number of special factors that transform Sclamo's situation into an extraordinary one meriting the downward departure. See, e.g., ___ ____ United States v. Johnson, 964 F.2d 124, 129 (2d Cir. 1992) ______________ _______ (affirming departure for defendant who "faced more than the responsibilities of an ordinary parent, more even than those of an ordinary single parent" as sole caregiver of 4 very young children); United States v. Pena, 930 F.2d 1486, 1495 (10th Cir. _____________ ____ 1991) (affirming departure to avoid placing infant children at risk). -7- As an initial matter, we cannot fault the district court's conclusion that the psychological treatment and observations of James were not contrived or fabricated to assist Sclamo. James's referral for individual psychotherapy, made by a case worker with no connection to defendant, predated the circumstances giving rise to this case. Moreover, the psychologist's reports are based on a long history of personal observation, interaction, and treatment not only of James but of defendant as well. The district court, therefore, was entitled to credit the psychologist's professional judgment of the critical and unique role played by defendant in James's treatment. Turning to the family ties at issue, we think that Sclamo's situation is readily distinguished from ordinary cases, where one can only speculate about the stresses that incarceration of a family member might cause. In this case, there is evidence not only that James already suffers from a clinical disorder, but that his condition will deteriorate if defendant is incarcerated. Sclamo has a track record of steady and effective support and guidance of James over a lengthy period during which Sclamo was both instructed and monitored by a psychologist. The psychologist's prognosis that James would risk regression and harm if defendant were incarcerated amply supports the district court's determination that Sclamo's relationship to James is sufficiently extraordinary to sustain a downward departure. We therefore think that, under our present more restricted standard of review, the decision made by the district court must -8- be affirmed. We acknowledge that our own analysis of the circumstances setting this case apart from the ordinary case is more lengthy and detailed than that of the district court. In future cases we would expect, in line with our general discussion in Rivera, a very deliberate discussion of the factors making the ______ case unusual. But we see no purpose served in this case, decided below without the benefit of our recent guidance, in remanding to make explicit what was implicit. Affirmed. ________ -9-