November 22, 1994 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT
 

No. 93-2120

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 WILLIAM J. DeCOSTA,

 Defendant, Appellant.

 

 ERRATA SHEET ERRATA SHEET

The opinion of this court issued on October 7, 1994, is hereby

amended as follows:

Delete the last two sentences of the first full paragraph on page

ten which begins with "As for the . . . ." and ends with "is worth

pondering." and replace the sentences with the following two

sentences:

 "As for the government, zeal is ordinarily to be
 admired in a prosector but it can be overdone.
 Accordingly, we are comforted to learn that prior
 to prosecution DeCosta was offered an opportunity
 to participate in the pretrial diversion program--
 even though for reasons not developed in the record
 no agreement was ultimately reached."

 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT
 

No. 93-2120

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 WILLIAM J. DeCOSTA,

 Defendant, Appellant.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Mark L. Wolf, U.S. District Judge] 

 

 Before

 Selya, Circuit Judge, 

 Bownes, Senior Circuit Judge, 

 and Boudin, Circuit Judge. 

 

Frank P. Marchetti, by Appointment of the Court, for appellant. 
Nadine Pellegrini, Assistant United States Attorney, with whom 
Donald K. Stern, United States Attorney, was on brief for the United 
States. 

 

 October 7, 1994
 

 BOUDIN, Circuit Judge. As part of a postal service 

"sting," postal inspectors placed an advertisement concerning

child pornography in a local publication. William DeCosta

was foolish enough to respond. In correspondence with an

undercover postal inspector, DeCosta expressed an interest in

receiving such material. In February 1989, DeCosta mailed to

the undercover agent four photographs depicting young girls

in sexually explicit poses. Thereafter he was indicted. 

 In December 1992, DeCosta pleaded guilty to a violation

of 18 U.S.C. 2252(a)(2) which relates to the mailing of

child pornography. Prior to the plea, the government (in

connection with DeCosta's release conditions) urged that

DeCosta might be dangerous to children, offering the

testimony of a psychologist who had examined DeCosta. The

district judge had DeCosta examined by another expert and

accepted that expert's conclusion that DeCosta posed no such

danger. 

 The guideline sentence for DeCosta's offense, given his

lack of any criminal history, was 12 to 18 months

imprisonment. U.S.S.G. 2G2.2 (1989). (The district court

utilized the November 1989 manual because a subsequent

increase in the guideline range posed an ex post facto 

problem; all citations below are to the 1989 manual.)

Between the time of the guilty plea and the sentencing

hearing on August 12, 1993, the district court energetically

 -2- -2-

explored the options available, including in-prison

treatment. DeCosta himself was receiving out-patient

counseling at the time of the sentencing hearing. At the

sentencing hearing on August 12, 1993, the district judge

asked the prosecutor whether the U.S. Attorney's office would

consider an alternative to imprisonment; it appears from the

transcript that there had been earlier, unsuccessful efforts

along this line. The prosecutor said that the matter had

been discussed in her office and that pre-trial diversion was

not agreeable to the government. In fact, the prosecutor

urged imprisonment for 18 months, the maximum period allowed

under the guidelines.

 At the hearing, there was testimony from the expert who

had previously concluded that DeCosta posed no physical

danger to anyone. DeCosta's attorney urged the court to

impose probation but provided no explanation as to how the

court might be empowered to do so. Counsel did advert to

DeCosta's present out-patient treatment, his somewhat limited

intelligence and the fact that he had not taken the pictures

he had mailed. It was also pointed out that although DeCosta

had lost his job as a security guard, he had found new

employment to support his family.

 After describing DeCosta's current out-patient

treatment, his counsel said that he (DeCosta) "has improved

tremendously" in his attitude and outlook. DeCosta's wife,

 -3- -3-

said counsel, wants him home. When defense counsel said that

the court "should look further, to see if there's some way to

give this man probation," the district court pointed out that

it had urged counsel to help it to distinguish several cases

that appeared to limit the court's ability to depart from the

guidelines. The court then said that DeCosta could receive

treatment at the Buttner, North Carolina, facility if the 12

month minimum sentence were imposed. DeCosta's counsel

replied:

 I think the repercussions of that would
 be far greater than what we've had up to
 this point, where the children [DeCosta's
 children] have suffered, the family has
 suffered, the publicity has hurt them.
 He's lost his job, his income has
 suffered. Now, the family will be on
 welfare and I don't think they'll ever
 get back together, if this man goes away
 for a year. . . . And that would be even
 sadder than what we've got today.

 After a further colloquy, including the prosecutor's

rejection of pretrial diversion, the court sentenced DeCosta

to one year of imprisonment, three years of supervised

release including mental health counseling as directed, and

the mandatory $50 special assessment. The court recommended

to the Bureau of Prisons that the sentence be served at

Buttner with appropriate treatment. Thereafter, the district

court stayed the sentence pending this appeal.

 On appeal, DeCosta's central argument concerns the

district court failure to depart from the guidelines range

 -4- -4-

and sentence DeCosta to probation or something less than one

year. It is settled law that a sentencing court is entitled

to depart in cases that fall outside the "heartland"

contemplated by the guidelines. See United States v. Rivera, 

994 F.2d 942, 946-47 (1st Cir. 1993). Both the statute and

the guidelines permit departures where the court finds "an

aggravating or mitigating circumstance of a kind, or to a

degree not adequately taken into consideration" by the

Sentencing Commission "that should result in a sentence

different from that described" in the guidelines. 18 U.S.C.

 3553(b); U.S.S.G. 5K2.0.

 Although the decision not to depart is ordinarily within

the district court's discretion, DeCosta asserts that the

district court erred in concluding that it had no discretion

to depart. It quotes in part the district judge's comment at

the hearing:

 But unless I am persuaded that this
 case is extraordinary [in] kind o[r]
 degree and a departure is justified, I'm
 required to give the defendant at least
 12 months in prison. Anticipating that I
 would not have the discretion to give a
 probationary sentence, I've talked with
 the Bureau of Prisons, as well as with
 Pretrial Services and Probation.

DeCosta's brief further argues that the court could and

should have departed in light of DeCosta's limited

intelligence, his family and employment situation, his

cooperation in seeking counseling, his acceptance of

 -5- -5-

responsibility, and the lack of danger that he posed to

others.

 The government has responded with a brief of more than

twice the length of that filed by DeCosta. The brief argues,

with extensive citations, that DeCosta failed to raise the

departure issue below and has therefore waived it. If not

waived, says the government, the district court's sentence is

in any case within the guideline range and therefore non-

appealable. Finally, if the refusal to depart is appealable,

the government says that none of the family or other

circumstances urged are extraordinary enough to provide a

reasonable basis for departure; and the brief analyzes each

of these grounds. It is not easy to think of anything else

that might have been argued in defense of the sentence.

 We start with the government's claim that the departure

issue has been waived. There is no doubt that the district

court did consider whether to depart. The court emphasized

DeCosta's lack of dangerousness and went so far as to ask the

parties to brief the question whether United States v. 

Studley, 907 F.2d 254 (1st Cir. 1990), and United States v. 

Deane, 907 F.2d 11 (1st Cir. 1990), precluded a departure on 

this ground. Apparently, DeCosta's counsel found no basis to

distinguish Studley or Deane and on appeal agrees that lack 

of dangerousness alone would not be a permissible basis for

departure.

 -6- -6-

 It is far less clear that the issue of departure on

other grounds was explicitly raised at the hearing.

DeCosta's counsel, as the government points out, never used

the term, and the factors that he emphasized at the hearing,

apart from lack of danger, were for the most part relevant to

the selection of a sentence within the guideline range. On

the other hand, DeCosta's counsel certainly did ask for

probation, a result that could only be reached through a

departure, and urged the same factors now pressed as grounds

for departure. The district court made clear that it would

happily depart if it had the authority to do so. On

balance, we are not inclined to resolve this case on the

basis of waiver.

 The government's next argument, that the district

court's decision is unreviewable, presents quite a different

problem. The discretionary decision not to depart is an

action ordinarily not subject to appellate review, but there

are certain exceptions. These exceptions include cases where

the sentencing court declines to depart because of "a mistake

of law," such as "the sentencing court's mistaken impression

that it lacked the legal authority to deviate" or its

"misapprehension of the rules governing departures." United 

States v. Gifford, 17 F.3d 462, 473 (1st Cir. 1994). For a 

thorough discussion of the matter, see United States v. 

Pierro, No. 93-1313 (1st Cir. July 27, 1994).  

 -7- -7-

 Difficulty commonly arises where mitigating factors are

urged as a basis for departure, and the district court simply

asserts that it "cannot" or "is without authority" to depart.

Terse phrases like these are common, for the district court

is not required to give reasons for refusing to depart, but

they may create an ambiguity. A district court might think

that it "cannot" depart based on the factors urged because it

misunderstands the guidelines or the precedents; for example,

it might think that a mitigating factor is a forbidden basis

for departure when it is actually a permissible one.

Conversely, a district court might say that it "cannot"

depart where it means only that it has weighed the factors

urged and found that they do not distinguish the case from

the mine run of cases.

 Here, we have no reason to think that the district court

made any mistake of law in construing the governing statute,

the guidelines or pertinent precedent. Defense counsel

implies that the district court must have underestimated its

authority to depart on grounds other than lack of danger,

because the court failed to discuss the other factors as a

possible basis for departure. But the obvious reason for

this "failure" is that defense counsel at the sentencing

hearing never explicitly urged these other factors as a basis

for departure.

 -8- -8-

 DeCosta is also not helped by the district judge's

comment that "I would not have the discretion to give a

probationary sentence . . . ." Context often explains just

what the court meant by such remarks and it does so here.

The district judge's immediately prior sentence, quoted 

above, makes plain that the district judge meant only that he

couldnot findthecase extraordinaryenoughto justifyadeparture.

 In this case, it is easy to conclude that there is no

evident or even arguable error of law that would allow us to

review the refusal to depart. But difficult cases--at least

as to reviewability--will remain wherever mitigating factors

are explicitly urged as the basis for a departure and the

district court says only that it "cannot" or "lacks power" to

depart. Sometimes, as here, it will be easy to determine

just what the district court meant. But because the problem

is a recurring one, we have a suggestion: that the district

court say--where this is the case--that it has considered the

mitigating factors urged but does not find them sufficiently

unusual to warrant a departure in the case at hand.

 Of course, in some cases this formula would not be

proper. Here, for example, we fully agree with the district

court that Studly and Deane mean that the district court 

would have had no authority to depart simply because DeCosta

was not dangerous. Similarly, if a district court desired to

depart but thought this course forbidden by explicit

 -9- -9-

guideline language, one would expect the court to cast its

refusal in these terms. But where permissible factors are

urged and the court simply thinks that there is not enough to

distinguish the case from the ordinary, a sentence to this

effect would be helpful.

 Having found no legal error, we need not consider the

government's final, alternative argument that the

circumstances in this case are not so extraordinary as to

provide a basis for departure. Still, it would be

unfortunate to leave the impression that there exists an

obvious basis for departure that we are ignoring because

defense counsel failed to frame the legal issue in the

district court. No record evidence is present here that

"reduced mental capacity contributed to the commission of the

offense," U.S.S.G. 5K2.13, and the guideline language on

family circumstances and employment is not helpful to DeCosta

in this case. Id. 5H1.5, 5H1.6. 

 Child pornography is not a victimless crime, but for

DeCosta and his family this is surely a very sad affair. We

commend the district court for its multiple efforts to find a

solution best suited to the circumstances. As for the

government, zeal is ordinarily to be admired in a prosector

but it can be overdone. Accordingly, we are comforted to

learn that prior to prosecution DeCosta was offered an

opportunity to participate in the pretrial diversion program-

 -10- -10-

-even though for reasons not developed in the record no

agreement was ultimately reached.

 The appeal is dismissed for want of appellate 

jurisdiction.

 -11- -11-