**UNITED STATES of America, Plaintiff,**

**v.**

**Telex J. LeBLANC, Defendant.**

**CR No. 92–10337–T.**

United States District Court,
D. Massachusetts.

June 29, 1993.

---

William H. Kettlewell, Dwyer & Collora, Jody L. Newman, Dwyer, Collora & Gertner, Boston, MA, for defendant.

Fred M. Wyshak, Jr., U.S. Attorney's Office, Boston, MA, for U.S.

## MEMORANDUM

TAURO, Chief Judge.

Defendant Telex J. LeBlanc was before this court on June 25, 1993, having pled guilty to three counts of violating 18 U.S.C. § 1956(a)(1)(B)(i), (ii) [laundering of monetary instruments], two counts of violating 18 U.S.C. § 1957 [engaging in monetary transactions in property derived from specified unlawful conduct], one count of violating 31 U.S.C. § 5324 [structuring transactions to evade reporting requirements], and one count of conspiracy to commit related acts in violation of 18 U.S.C. § 371. For reasons stated from the bench, the court sentenced LeBlanc to twelve months incarceration to be followed by two years of supervised release, and required him to pay a special assessment of $350, pursuant to 18 U.S.C. § 3013. This Memorandum sets forth the reasons underlying LeBlanc's sentence.

## I

### Background

Presentence filings establish that the conduct attributable to LeBlanc is essentially that of a bookmaker, or "bookie," who took sporting bets from bettors. In his role as a bookie, LeBlanc acted as an agent for codefendants Stephen Dickhaut and William Byrne, each of whom have previously pled guilty before this court. LeBlanc's status as a "money launderer" arises by virtue of the fact that bets were placed with him by check, and these checks were subsequently either negotiated by him or turned over to Dickhaut and Byrne to be negotiated by them.

The sentencing guidelines for the specific money laundering offenses to which LeBlanc pled guilty are found at U.S.S.G. §§ 2S1.1–.3. The Probation Office determined that § 2S1.1 was most analogous to this case and used that provision to calculate LeBlanc's Adjusted Offense Level, pursuant to U.S.S.G. § 3D1.3(a). After a three-level reduction for LeBlanc's acceptance of responsibility, the calculations yielded an offense level of 17 and a sentencing range of twenty-four to thirty months. Had LeBlanc pled guilty only to bookmaking, his base offense level would have been level 12, with a sentencing range of ten to sixteen months. See U.S.S.G. §§ 2E3.1–.2.

In his presentence memorandum and at his June 25, 1993 sentencing hearing, LeBlanc urged this court to depart downward from the guidelines and sentence him at level 12, on the theory that he should not be punished more severely for "money laundering" than he would or could be for the underlying offense of bookmaking.

## II

### Departure

Congress has empowered district courts to impose a sentence outside the guideline range when the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0. This case presents just such a circumstance. It involves behavior that falls outside of the "heartland" of a typical money laundering offense. See United States v. Rivera, 994 F.2d 942, 949 (1st Cir.1993) (discussing departure in the unusual or atypical case).

Here, LeBlanc acted as a bookmaking agent, an offense for which the guidelines set forth a base offense level of 12. It is difficult for this court to conceive of gambling being conducted or transacted in any form other than by money or monetary instruments. Yet, by participating in conduct which calls for a base offense level of 12, LeBlanc was charged with money laundering, which calls

for an offense level of 17, given LeBlanc's acceptance of responsibility. In essence, LeBlanc finds himself facing a sentence far in excess of that which is commensurate with his actual conduct.

While LeBlanc's conduct may technically constitute money laundering—an offense to which he has pled guilty—this court finds that sentencing him pursuant to the strictures of the money laundering statute would present an inequity not adequately taken into consideration by the Sentencing Commission. *See id.* at 946–47; *cf. United States v. Edgmon*, 952 F.2d 1206, 1214 (10th Cir.1991) ("Congress aimed the crime of money laundering at conduct that follows in time the underlying crime rather than to afford an alternative means of punishing the prior 'specified unlawful activity.' "), *cert. denied,* —— U.S. ——, 112 S.Ct. 3037, 120 L.Ed.2d 906. LeBlanc took checks from bettors and either negotiated them himself or turned them over to his supervisors, Dickhaut and Byrne. When all of the verbiage and terminology in the indictment are stripped away, that is the sum and substance of the conduct for which he was charged. Accordingly, this court finds that a 5 level downward departure is warranted, resulting in an offense level of 12.

### III

*Conclusion*

For the foregoing reasons, this court departs downward an additional 5 levels. Since defendant LeBlanc's criminal category is I, the twelve-month sentence imposed at the June 25, 1993 sentencing hearing falls squarely within the ten- to sixteen-month permissible sentencing range corresponding to a level 12 offense.

An Order will issue.

### ORDER

For the reasons stated in the accompanying Memorandum, the court hereby commits defendant LeBlanc to the custody of the Bureau of Prisons for a period of twelve months. Upon release, defendant LeBlanc shall be placed on supervised release for a term of two years. The court also imposes a $350 special assessment.

Copies of this Order and the accompanying Memorandum shall be issued to all counsel of record, the Probation Office, the United States Marshal, and the United States Sentencing Commission.

IT IS SO ORDERED.