**UNITED STATES of America, Appellee,**

v.

**Nelson Valencia CALDERON, Defendant, Appellant.**

**No. 91–1006.**

United States Court of Appeals, First Circuit.

Heard May 8, 1991.

Decided June 4, 1991.

---

**10**

John F. Cicilline, Providence, R.I., for defendant, appellant.

Margaret E. Curran, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., and Lawrence D. Gaynor, Asst. U.S. Atty., were on brief, for appellee.

Before SELYA, Circuit Judge,
COFFIN, Senior Circuit Judge, and CYR, Circuit Judge.

CYR, Circuit Judge.

Appellant Nelson Valencia Calderon pled guilty to one count of conspiracy to distribute, and possess with intent to distribute, 500 or more grams of cocaine, in violation of 21 U.S.C. § 846, and to one count of distributing 500 or more grams of cocaine, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(B). Appellant challenges the district court's two-level increase in appellant's base offense level, pursuant to U.S.S.G. § 3B1.1(c) (managerial role in offense), and its one-level increase in appellant's criminal history category, pursuant to U.S.S.G. § 4A1.3 (applicable to offenses committed while awaiting disposition of another criminal charge). We affirm.

## I. Adjustment for Managerial Role, § 3B1.1(c)

We review the district court's fact-intensive determination of a defendant's role in the offense for "clear error." *United States v. Akitoye*, 923 F.2d 221, 227 (1st Cir.1991); *United States v. Ocasio*, 914 F.2d 330, 333 (1st Cir.1990).

The prerequisite findings of fact for a two-level increase in base offense level under U.S.S.G. § 3B1.1(c) are (1) that there were at least two participants in the offense, and (2) that the defendant exercised some control over, or was otherwise responsible for organizing the actions of, at least one other participant. *See Akitoye*, 923 F.2d at 227; *United States v. Fuller*, 897 F.2d 1217, 1220 (1st Cir.1990). Whether a defendant's role in the offense warrants a two-level increase pursuant to § 3B1.1 may depend, *inter alia*, on "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. § 3B1.1 (n. 3); *see also Fuller*, 897 F.2d at 1220–1221. "These factors are not mandatory conditions, but rather 'various factors to be weighed' " in evaluating a defendant's role in the offense. *United States v. Preakos*, 907 F.2d 7, 9 (1st Cir.1990) (quoting *United States v. Ortiz*, 878 F.2d 125, 127 (3d Cir.1989)).

The undisputed information in the presentence report reveals that Raymond Souza, a government informant, advised appellant in March 1989 that he wanted to broker a cocaine transaction between appellant and two interested buyers. Appellant agreed to arrange a sale at $16,500 per kilogram. Later, Souza met with appellant and co-defendant Raul Pabon–Restrepo, and a two-kilogram cocaine transaction was scheduled for March 28, 1989. After the March 28 meeting was cancelled, appellant, Souza, and one of the prospective buyers rescheduled it for March 30.

At approximately 3:00 p.m. on March 30, as law enforcement officers watched, appellant, Souza, and one of the buyers arrived by vehicle at a McDonald's restaurant in the Lincoln Mall, Lincoln, Rhode Island. Soon three other men, who were there to pick up the cocaine, arrived in a white Pinto, disembarked, and entered the restaurant. While Souza and appellant remained in the Souza vehicle, Souza gave appellant a package containing more than $34,000 in cash. Appellant paid Souza $1,000 as a broker fee and kept the remainder.

Appellant exited the Souza vehicle and got into a nearby Datsun in which Pabon was sitting. Pabon exited the Datsun and got into another car. Appellant drove away with the cash. Pabon then placed a bag in the white Pinto, returned to his own vehicle and drove away. The three men emerged from the restaurant and drove away in the same white Pinto in which they had arrived. When the white Pinto was stopped, the police recovered two packages containing 1993.6 grams of cocaine.

The district court decided upon a two-level base offense level increase under § 3B1.1 because appellant: (1) arranged the cocaine transaction; (2) caused Pabon to deliver the cocaine; and (3) received the purchase money and distributed a portion of it to Souza, the informant, as a broker fee. Appellant argues that these factors do not establish that he exercised control over another participant, but merely that appellant's role in the offense was on a parity with Pabon's.

While the circumstantial evidence did not compel an inference that appellant assumed a managerial role in the commission of these offenses, we cannot conclude that it was unreasonable so to infer from the facts before the district court. So far as can be discerned from the record, appellant was acting on his own when he agreed to supply two kilograms of cocaine, at a fixed price, stating that "he would have someone sell cocaine" to the prospective buyer. At the actual exchange, it was appellant who received payment for the cocaine, who determined to pay the $1,000 broker fee, and who tendered it to Souza. Thus, appel-

lant's conduct demonstrated substantial "decision making authority" and a significant "degree of participation in planning [and] organizing the offense." *See* U.S. S.G. § 3B1.1 (n. 3). Fairly considered, the record would support a reasonable inference that appellant authorized Pabon to deliver the cocaine once appellant had driven away with the cash. Thus, the district court supportably determined that appellant exercised some supervisory authority over Pabon. Moreover, on the other side of the ledger there is nothing to suggest that Pabon directed, managed or supervised appellant in any way. Thus, there was no role parity. The net import of the circumstantial evidence and reasonable inferences is that appellant exercised significant decisional, organizational, and supervisory responsibility in the commission of these offenses, whereas there is no evidence that Pabon's role was anything other than that of a subordinate to appellant. *See* U.S.S.G. § 3B1.1. We find no error.

## II. *Departure for Underrepresented Criminal History, § 4A1.3*

Our framework for reviewing upward departures under the sentencing guidelines is well settled. First, we undertake de *novo* review of the correctness of the district court's determination that the relevant circumstances were sufficiently 'unusual' to warrant departure. Second, all findings of fact material to the challenged departure are reviewed for clear error. Third, we accord considerable deference to the decision of the district court in our review of the reasonableness of the degree of departure, which is 'quintessentially a judgment call' for the district court.

*United States v. Figaro,* 935 F.2d 4, 6 (1st Cir.1991) (citations omitted).

Appellant concedes that the commission of an offense while awaiting disposition of another charge may warrant an increase in the defendant's otherwise-underrepresented criminal history category. *See* U.S. S.G. § 4A1.3. *See also United States v. Hernandez,* 896 F.2d 642, 645 (1st Cir.1990) (offense committed while awaiting trial on

state drug and firearm charges); *United States v. Polanco–Reynoso,* 924 F.2d 23, 24–25 (1st Cir.1991) (offense committed while on conditional release on state drug charge).[1]

Appellant contends, however, that a condition precedent to any increase under U.S.S.G. § 4A1.3 was never met: namely, the determination that "the criminal history category *significantly* underrepresents the seriousness of the defendant's criminal history...." (emphasis added). As support for the contention that the district court determined upon a one-level increase without regard to the representativeness of the prescribed criminal history category, appellant invites particular attention to the district court's statement that "this court has consistently taken the position as [it] will in this case that when an individual commits an offense while on bail or pending trial on another offense that that warrants an increase, a departure for purposes of determining the criminal history."

■ We admit concern that this statement may imply a misconception that an increase was appropriate under section 4A1.3 *merely* by virtue of the fact that the offense of conviction was committed while the defendant was awaiting disposition of another charge, without regard to the representativeness of the defendant's criminal history category or to the constraints of individualized sentencing. The purpose of the sentencing guidelines "is to provide a structure for evaluating the fairness and appropriateness of the sentence for an individual offender, not to eliminate the thoughtful imposition of individualized sentences." S.Rep. No. 225, 98th Cong., 2d Sess., *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3235, *cited in United States v. Diaz–Villafane,* 874 F.2d 43, 52 (1st Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989); *see also Ocasio,* 914 F.2d at 336 (sentencing guidelines do not abandon "individualized sentencing"). Therefore, we reiterate that "[d]eparture is permitted [only] in those

cases where *idiosyncratic circumstances warrant individualization of sentence* beyond that which is possible within the comparatively close-hewn parameters constructed by the guidelines." *United States v. Aguilar–Pena,* 887 F.2d 347, 349 (1st Cir.1989) (emphasis added); *see also United States v. Williams,* 891 F.2d 962, 964 (1st Cir.1989) (same).

■ Nevertheless, the district court's apparent misstatement may not be interpreted out of context as appellant would have it. The court specifically determined "that the appropriate criminal history category here is not category three but rather category four...." We cannot fault its "judgment call," *see Diaz–Villafane,* 874 F.2d at 49–50, that a one-level increase was warranted where the defendant committed serious cocaine offenses involving almost two kilograms of cocaine while awaiting disposition of a state charge involving almost four kilograms of cocaine. As the district court stated, "when one is released pending trial one commits to keeping the peace and being of good behavior. And if one commits an offense of *this sort while on release,* that person has breached that commitment." (emphasis added). *See Hernandez,* 896 F.2d at 645 (defendant who commits a crime while under court supervision "undermines the integrity of the criminal justice system"); *Polanco–Reynoso,* 924 F.2d at 24–25 (same). The implicit determination that appellant's criminal history would be significantly underrepresented absent a one-level increase in the criminal history category was not erroneous.

■ Finally, the district court did not abuse its discretion in determining the degree of departure. The sentencing court correctly referred in the first instance to the sentencing range for a defendant with the next higher criminal history category. U.S.S.G. § 4A1.3; *see also Polanco–Reynoso,* 924 F.2d at 25; *United States v. Aymelek,* 926 F.2d 64, 70 (1st Cir.1991).[2]

---

1. Appellant concedes as well that the offenses of conviction were committed while he was awaiting trial on a state drug trafficking charge allegedly involving four kilograms of cocaine.

2. *See* U.S.S.G. § 4A1.3 ("In considering a departure under this provision, the Commission intends that the court use, as a reference, the guideline range for a defendant with a higher or

The prescribed sentencing range for criminal history IV and offense level twenty-six is 92 to 115 months.[3] The district court determined upon a sentence at the lower end of the indicated guideline range, 95 months, which was well within its "considerable discretion in departure decisions." *Diaz–Villafane*, 874 F.2d at 52; *Polanco–Reynoso*, 924 F.2d at 25.

*Affirmed.*

lower criminal history category, as applicable."); *see also Polanco–Reynoso*, 924 F.2d at 25 (approving upward departure to next criminal history category).

3. Absent the one-level increase in appellant's criminal history category, the indicated guideline sentencing range would have been between 78 and 97 months.