UNITED STATES, Appellee,

v.

Dominic ROTOLO, Defendant, Appellant.

No. 91–1436.

United States Court of Appeals, First Circuit.

Heard Oct. 9, 1991.

Decided Dec. 3, 1991.

Martin G. Weinberg, Boston, Mass., with whom Edward J. Romano, Providence, R.I., was on brief, for appellant.

plaintiffs did not appeal from these rulings. *See* note 1, *supra.*

Margaret E. Curran, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., and Lawrence D. Gaynor, Asst. U.S. Atty., Providence, R.I., were on brief, for appellee.

Before BREYER, Chief Judge, . CAMPBELL, Circuit Judge, and ZOBEL,* District Judge.

BREYER, Chief Judge.

The appellant, Dominic Rotolo, pled guilty to several charges, including conspiring to possess, and attempting to possess, more than one hundred kilograms of marijuana (with the intent to distribute). 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(B). He now appeals his sentence of 108 months in prison. He claims that the district court made two errors in applying the Sentencing Guidelines.

■ First, he says that the court should not have added two offense levels for an "aggravating role" in the offense as an "organizer, leader, manager, or supervisor in any criminal activity" involving between one and three other persons. U.S.S.G. § 3B1.1(c). He argues that the court should have compared his conduct to that of a typical buyer of a large amount of marijuana, making an adjustment only if his conduct was more egregious than average. For legal support, Rotolo points to a statement of the Sentencing Commission's Chairman, Judge William Wilkins, in a case called *United States v. Daughtrey*, 874 F.2d 213 (4th Cir.1989). In *Daughtrey*, Judge Wilkins said that, when applying "role in the offense" adjustments, a court ought to measure, among other things,

> each participant's individual acts and relative culpability against the elements of the offense of conviction.

*Id.* at 216.

The problem with appellant's argument is that *Daughtrey* (and presumably Judge Wilkins' *dicta*) concerns a *downward* "role in the offense" adjustment—an adjustment for one who is a "minor" or a "minimal" participant in a particular crime. U.S.S.G. § 3B1.2. The Background Note for *down-*

*ward,* "mitigating role" adjustments states that these adjustments are "for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. § 3B1.2, comment. (backg'd.). *Cf. United States v. Ocasio*, 914 F.2d 330, 333 (1st Cir.1990). Judge Wilkins' explanation makes clear that one who, say, points a gun at a bank teller and seizes the money is not entitled to a *downward* adjustment simply because someone else in the gang supervised his activities.

The Guidelines' discussion of the *upward* "aggravating role" adjustments (for leaders, organizers, managers, and supervisors), however, contains no specific requirement or suggestion that the adjustment applies only when conduct is more culpable than average. Rather, the adjustment seems designed primarily to take account of added culpability flowing from the leadership role itself. Even if, say, the bank robbery gang leader did no more than give orders and seemed, in context, no more culpable than other, typical bank robbers involved in other, typical bank robberies, he could still receive the upward adjustment. *See* U.S.S.G. § 3B1.1 comment. (backg'd.). We do not read the "aggravating role" guideline as absolutely *forbidding* a court from making comparisons to the "average" participant. *Cf. United States v. Wright,* 873 F.2d 437, 444 (1st Cir.1989) (endorsing deferential review of district court's role in the offense adjustments). But, the Guideline does not legally *require* it to do so. Hence, the upward adjustment is lawful.

■ We add that the undisputed facts of this case permitted the court to assign Rotolo a two-level upward "supervisor's" adjustment. U.S.S.G. § 3B1.1(c). The Presentence Report describes how, in October 1990, a government agent, pretending to be a marijuana seller, negotiated with Rotolo for the sale of a half ton or more of marijuana. The "seller" met Rotolo at Rotolo's house on November 1, 1990. Rotolo had with him a man named David Maurer, who brought a van to transport the marijuana.

* Of the District of Massachusetts, sitting by designation.

Rotolo displayed $365,000 to the "seller," and the "seller" then drove off in Maurer's van, ostensibly to obtain the marijuana. These facts permit the court to find that Rotolo "exercised control over, or was otherwise responsible for organizing the activities of, at least one other individual [namely, Maurer] in committing the crime." *United States v. Akitoye*, 923 F.2d 221, 227 (1st Cir.1991). *See also United States v. Calderon*, 935 F.2d 9, 10 (1st Cir.1991) (district court's fact-intensive determination of a defendant's role in the offense reviewed for "clear error").

■ Second, Rotolo objects to the court having based his sentence on an attempted purchase of a ton, rather than half a ton, of marijuana. He concedes that at various times during the negotiations he said he wanted to buy a full ton. But, he argues that he could not afford to buy a full ton of marijuana and did not actually intend to purchase that amount. He points to Guideline commentary that says

> where the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the court shall exclude [that amount] from the guideline calculation....

U.S.S.G. § 2D1.4, comment. (n.1).

As the district court pointed out, however, the problem with Rotolo's argument is that he did more than simply mention casually to the "seller" that he wanted to buy a ton of marijuana. Indeed, at the very start of the negotiations, Rotolo expressed an interest in buying a full ton. Although, during one subsequent conversation, Rotolo indicated that he could only afford to pay for the first half ton, Rotolo later renewed negotiations for the second half. Thus, on October 27, Rotolo reaffirmed his interest in purchasing the *second* half ton. On October 31, he called the "seller" and spoke specifically about taking delivery of an *additional* half ton on November 3, two days after he was to receive the first half ton. Rotolo was also specific about price (an additional $250,000 downpayment). Indeed, Rotolo told the Probation Officer

Although I still did not have available to me the down payment for [the second half ton] ..., I admit my desire to purchase the second half ton if the first half ton transaction was successfully completed.

Given these facts, the district court might have believed that Rotolo reasonably expected he would be able to pay for the second half ton with money realized from the resale of the first half ton or from other financial sources. All this being so, we cannot say that the court's finding—that the conspiracy to buy marijuana encompassed an entire ton—was "clearly erroneous." *United States v. Marino*, 936 F.2d 23, 27 (1st Cir.1991) (district court's finding of fact concerning quantity of drugs reviewed for clear error); *United States v. Estrada–Molina*, 931 F.2d 964, 966 (1st Cir.1991) (where more than one plausible view of circumstances exist, district court's choice cannot be clear error).

The judgment of the district court is *Affirmed.*