**UNITED STATES, Appellee,**

v.

**Ever Miguel LEGARDA, Defendant, Appellant.**

**No. 93–1448.**

United States Court of Appeals, First Circuit.

Heard Dec. 7, 1993.

Decided March 3, 1994.

---

Dominick J. Porco, Scarsdale, NY, with whom Martin L. Schmukler, New York City, was on brief, for appellant.

Margaret E. Curran, Assistant United States Attorney, with whom Edwin J. Gale, United States Attorney, and Gerard B. Sullivan, Assistant United States Attorney, Providence, RI, were on brief, for appellee.

Before TORRUELLA, Circuit Judge, COFFIN, Senior Circuit Judge, and STAHL, Circuit Judge.

STAHL, Circuit Judge.

In this drug appeal, defendant Ever Miguel Legarda challenges: 1) trial rulings made by the district court which excluded certain testimony on hearsay grounds; 2) the court's computation of the relevant amount of cocaine for sentencing purposes; and 3) the court's upward departure from the Guidelines. Finding no reversible error, we affirm.

## I.

### FACTUAL BACKGROUND AND PRIOR PROCEEDINGS

In July of 1992, defendant traveled from New York City, where he resided, to his native country of Colombia. Upon his return to New York, and apparently at the urging of someone he had met in Colombia, defendant contacted Michael Teixera, known to defendant as Luis Rodrigues, and arranged a meeting on a Manhattan street corner. In a subsequent phone call by defendant to Teixera, the two arranged for Teixera to leave an automobile for defendant's use on that same Manhattan street corner where the two had initially met. Defendant also agreed with Teixera that defendant would drive the car to a restaurant in Astoria, Queens, where he was to meet a man named Nunyo, that he would thereafter drive the car to Providence, Rhode Island, and that he would be paid several thousand dollars for doing so.

On August 20, 1992, adhering to the plan, defendant picked up the car in Manhattan, drove to the restaurant in Queens, and met Nunyo, who placed a box in the trunk of the car. The box contained eleven kilograms of cocaine, later found to be 88% pure. Rather than proceed directly to Providence, defendant drove to the home of his former girlfriend and his two sons where he obtained his former girlfriend's permission to travel to Providence in her car, rather than in the car he had picked up in Manhattan. Defendant drove to Providence accompanied by his two

sons, both under the age of thirteen, and one dog.

Upon arriving in Providence, defendant again met Teixera, who was a government informant. Teixera had arranged for a controlled drug purchase in which defendant would sell cocaine to United States Drug Enforcement Administration ("DEA") Task Force Agent Lawrence Lepore, a detective in the Providence Police Department. Defendant followed Teixera to an apartment where Lepore was to make the purchase. Defendant's two sons entered the apartment, along with defendant. After discussing the price of the eleven kilograms with Lepore, as well as possible future sales, defendant delivered the eleven kilograms to Lepore. During the consummation of the deal, defendant's two sons were left in a separate room in the apartment. DEA agents observed the purchase and arrested defendant.

After his arrest, defendant stated to Lepore that he had brought his children along in order to lessen the likelihood of being stopped on his drive from New York City to Providence. He also stated that he knew that the box contained drugs and that he was aware of larger quantities of drugs being imported from Colombia. At trial, however, defendant denied such knowledge. He was nonetheless found guilty of possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(ii).

## II.

### DISCUSSION

As noted above, defendant offers three challenges on appeal. We address them in turn.

### A. The District Court's Hearsay Rulings

At trial, defendant took the stand and attempted to recount statements that were allegedly made to him by individuals in Colombia, as well as statements made by Nunyo, his contact in Astoria, Queens, and by Teixera. In each case, the district court sustained government objections on hearsay grounds. *See* Fed.R.Evid. 802. Defense counsel repeatedly explained that defendant

was not offering these statements in order to prove the truth of the matter asserted. Rather, he argued that the significance of these alleged statements lay solely in the fact that they were made and that they therefore had an effect on defendant's behavior. *See, e.g.,* Fed.R.Evid. 801(c) advisory committee's note ("If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay."); *United States v. Hicks,* 848 F.2d 1, 3 (1st Cir.1988) (quoting same).

On appeal, the government concedes that these hearsay rulings were erroneous, and we agree that the record clearly demonstrates error on the part of the trial court. Nonetheless, not all improper exclusions of evidence require reversal. Rather, an appellant must show that an error "results in actual prejudice because it 'had substantial and injurious effect or influence in determining the jury's verdict.'" *United States v. Lane,* 474 U.S. 438, 449, 106 S.Ct. 725, 732, 88 L.Ed.2d 814 (1985) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)). *See also* 28 U.S.C. § 2111 ("On the hearing of any appeal ... in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."); Fed.R.Crim.P. 52(a) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."). Defendant fails to establish such harm.

Judging from the contexts of the district court's multiple erroneous hearsay rulings, it appears that defendant in each instance was prepared to offer exculpatory information about each of the conversations, i.e., innocuous reasons offered to him by each speaker which would prompt defendant to perform the acts which eventually led to his arrest. Later in his testimony, however, defendant was allowed to offer this exculpatory explanation of events. Defendant testified that in his conversations with Teixera, Nunyo and others, he was led to believe that the delivery concerned either "spare parts" or cash. Thus, despite the erroneous rulings,

defendant was eventually allowed to recount the essential elements of his own version of events. Notwithstanding his general complaints of unfairness, defendant does not argue, nor could he on the record before us, that these errors had a substantial and injurious effect or influence on the jury's decision to convict him.

In sum, defendant "was allowed to put on a defense, even if not quite so complete a defense as he might reasonably have desired." *United States v. Hanson,* 994 F.2d 403, 407 (7th Cir.1993). The substance of the excluded portions of his testimony was eventually allowed into evidence. Given these errors and no more, we cannot say that reversal is warranted.

*B. Sentencing*

*1. The Amount of Cocaine and the District Court's Base Offense Level Determination*

The sentencing court determined defendant's base offense level on the basis of twenty-one kilograms of cocaine; eleven kilograms that were actually delivered, and ten more that defendant purportedly promised to deliver the following week. Defendant challenges the district court's inclusion of the latter amount.

We begin by noting that facts supporting a sentence, such as drug quantity determinations, must be proven by the government by a preponderance of the evidence. *See United States v. Marino,* 936 F.2d 23, 27 (1st Cir.1991). Factual findings on such issues are reviewed only for clear error. *Id.*

Commentary Note 12 to section 2D1.1 of the United States Sentencing Guidelines provides in relevant part:

> In an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount. However, where the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the court shall exclude from the guideline calculation the amount that it finds the defen-

dant did not intend to produce and was not reasonably capable of producing.

Our case law has followed the language of this Commentary Note in a rather faithful fashion, requiring a showing of both intent and ability to deliver in order to allow the inclusion of negotiated amounts to be delivered at a future time. *See, e.g., United States v. Rotolo,* 950 F.2d 70, 72 (1st Cir. 1991); *United States v. Moreno,* 947 F.2d 7, 9 (1st Cir.1991), *United States v. Estrada–Molina,* 931 F.2d 964, 966 (1st Cir.1991); *United States v. Bradley,* 917 F.2d 601, 604 (1st Cir.1991). In this case, defendant challenges the district court's findings that he had both the intent and the ability to produce ten additional kilograms of cocaine. Though the case is close, we affirm.

At trial, a tape recording of the drug transaction in Lepore's apartment was placed in evidence. The taped conversation spans the period of time during which defendant purportedly negotiated to deliver the addi-tional ten kilograms. Audible portions of the tape reveal vague comments, made exclusively by Lepore rather than by defendant, about the possibility of future deals. Thus, the tape itself does not reveal the existence of an agreement to provide additional drugs.[1]

In addition to the tape, however, Lepore testified at trial that during that same meeting at which the delivery took place, defendant had agreed to provide ten kilograms on a weekly basis. Moreover, the inaudible portions of the tape do not altogether rule out the possibility that the specific agreement described by Lepore was made sometime during the transaction. The district court apparently chose to credit Lepore's testimony, and we have no basis for concluding that it was clearly erroneous in doing so. Accordingly, we find no error in the district court's conclusion that defendant fully intended to produce the first weekly instalment of cocaine under the agreement which Lepore described.[2]

---

1. *Compare, e.g., United States v. Cedano–Rojas,* 999 F.2d 1175, 1179 (7th Cir.1993) (finding that defendant had negotiated purchase of nine additional kilograms of cocaine where he stated, " 'Save them, save them,' and instructed [government informant who was selling the drugs] 'Don't give them away.' "); *United States v. Williams,* 994 F.2d 1287, 1293 (8th Cir.1993) (finding that defendant had negotiated additional sale where, "[o]nce the [government] agent asked about the price of a quarter-pound [of cocaine], [defendant] did offer to try to obtain and sell him this amount"); *United States v. Mahoney,* 972 F.2d 139, 143 (7th Cir.1992) (finding that defendant had negotiated additional sale where defendant discussed options for delivery and payment, and stated that he was "positive" that his supplier could deliver the additional amount); *United States v. Cea,* 963 F.2d 1027, 1031 (7th Cir.) (finding that defendant had negotiated additional purchase where evidence of "very specific negotiations as to price and amount" showed that defendant was "dead serious about buying and distributing ten kilograms of cocaine"), *cert. denied,* — U.S. —, 113 S.Ct. 281, 121 L.Ed.2d 208 (1992); *United States v. Burrell,* 963 F.2d 976, 995 (7th Cir.) (finding that defendant had negotiated additional purchase where "the terms of the sale were negotiated and agreed upon"), *cert. denied,* — U.S. —, 113 S.Ct. 357, 121 L.Ed.2d 270 (1992); *Rotolo,* 950 F.2d at 72 (finding that defendant had negotiated additional purchase where he, *inter alia,* "spoke specifically about taking delivery of an *additional* half ton") (emphasis in original); *Moreno,* 947 F.2d at 9 (finding that defendant had negotiated additional sale where he told government agents that he could supply five to ten kilograms at fifteen-day intervals *and* where defendant "agreed to supply these amounts, with the first delivery to be made within a week") (emphasis in original) *with United States v. Reyes,* 979 F.2d 1406, 1410 (10th Cir.1992) (finding that defendant had *not* negotiated additional sale because, "[w]hile Defendant did not rule out the possibility [of future drug transactions], the lack of specific details concerning an additional transaction indicates that, at best, Defendant intended to negotiate later"); *United States v. Ruiz,* 932 F.2d 1174, 1184 (7th Cir.) (finding that defendant had *not* negotiated additional sale where defendant, having promised two kilograms and delivered only one, commented, "It doesn't matter. I'll get you the other kilo. And if you want, even ten more I can get."), *cert. denied,* — U.S. —, 112 S.Ct. 151, 116 L.Ed.2d 116 (1991); *United States v. Foley,* 906 F.2d 1261, 1264 (8th Cir.1990) (finding that defendant had *not* negotiated additional sale where government agent had "simply inquired about the cost" of additional quantities of drugs).

2. Unlike defendant, we are not troubled by the fact that the district court might have sentenced defendant on *more* than ten additional kilograms based on the weekly nature of the purported deal, and we express no opinion on the propriety of a hypothetical maximum base offense level quantity determination based on these facts. Rather, on the basis of the evidence before it, the district court was entitled to find, and it did in fact find, that defendant agreed to deliver only the first weekly instalment of ten kilograms.

As to defendant's *ability* to produce the ten additional kilograms, we find entirely plausible the district court's conclusion that defendant, having delivered eleven kilograms of cocaine one week, was capable of delivering ten kilograms the following week. Accordingly, we find no clear error in the district court's drug quantity calculation.

### 2. The Upward Departure

■ Finally, defendant appeals a two-level upward departure to his sentence. We review the departure along the lines set out in *United States v. Rivera*, 994 F.2d 942, 950–52 (1st Cir.1993). Plenary review is applied to determine whether the allegedly special circumstances underlying the departure are of the kind that the Guidelines permit the sentencing court to consider. *Id.* at 951. Plenary review is also applied to interpretations of Guideline language. *Id.* However, we review the district court's determination that a case is unusual, and therefore worthy of departure, "with full awareness of, and respect for, the trier's superior feel for the case." *Id.* at 952 (citations and internal quotation marks omitted). Similarly deferential is our review of the sentencing court's findings of fact, as well as the direction and degree of the departure. *Id.*

■ In this case, the district court offered two reasons for its upward departure: 1) defendant's prominent role in cocaine dealing as evidenced both by the quantity involved and its purity; and 2) the involvement of defendant's minor children. These grounds for departure are both permissible under the Guidelines and warranted on the record before us.

### a. Defendant's Prominent Role as Evidenced by Purity and Amount

Defendant argues that the sentencing court erred when, in deciding to depart upward, it relied upon the purity and amount of the cocaine involved. Consideration of both factors was allowable in this case.

Commentary Note 9 of U.S.S.G. § 2D1.1 states specifically that "[t]rafficking in controlled substances, compounds, or mixtures of unusually high purity may warrant an upward departure." Note 9 goes on to state that purity "may be relevant in the sentencing process because it is probative of the defendant's *role or position in the chain of distribution.*" *Id.* (emphasis supplied). Thus, upward departures which are based on a defendant's position in the chain of drug distribution and which are evidenced by drug purity are clearly contemplated under the sentencing guidelines. *Cf. United States v. Iguaran–Palmar*, 926 F.2d 7, 9 (1st Cir.1991) (stating that "the sentencing court may consider the drug's purity in making *an upward departure* from the applicable guideline range") (emphasis in original).

As defendant points out, Note 9 also provides, "As large quantities are normally associated with high purities, this factor is *particularly relevant* where smaller quantities are involved." (emphasis supplied). We agree with the Seventh Circuit, however, that "although the note states that purity is *especially* relevant in the case of smaller quantities of controlled substances, it does not thereby render purity irrelevant where larger quantities are involved. Rather, the correct reading of the note is that purity is relevant without regard to the quantity of controlled substances, but is *particularly relevant* where the quantities involved are small." *United States v. Connor*, 992 F.2d 1459, 1463 (7th Cir.1993) (emphasis supplied). In sum, the district court did not err in taking into account the purity of the drugs at issue in its decision to depart upward.

Equally futile is defendant's insistence that the sentencing court erred in considering the amount of cocaine at issue in enhancing defendant's guideline range. It is true, as defendant argues, that an upward departure based upon amount *alone* may unfairly duplicate a base offense level determination. *See, e.g., United States v. Fuller*, 897 F.2d 1217, 1221–22 (1st Cir.1990). Here, however, the departure was not based solely upon the amount involved. Rather defendant's role in the drug distribution chain served as the partial basis for the departure, and the amount involved, much like the purity of the cocaine, was merely indicative of defendant's role. Thus, we find no error in the court's finding that the amount and purity of the

cocaine were significant indicators of defendant's prominent role in the drug distribution chain.

As to the factual findings of high purity and large amounts of cocaine, as well as the "unusualness" of these factors, *see, e.g., Rivera*, 994 F.2d at 952, we find no error in the district court's determination that eleven kilograms of 88% pure cocaine serves, in part, as a valid basis for departure.

### b. *Involvement of Children*

Defendant also argues that the district court erred in basing its upward departure in part on the use of his children in the offense. Defendant essentially concedes that the involvement of children in drug trafficking activity is an accepted ground for upward departure and challenges only the existence of factual circumstances in this case that warrant a departure on that basis. He argues that the involvement of his own children is significantly less serious than the involvement of children in other cases in which departures were found warranted. *See, e.g., United States v. Rodriguez–Cardona*, 924 F.2d 1148, 1155 (1st Cir.) (affirming upward departure where defendant had, *inter alia*, "used a minor, a nine or ten year old boy, as a messenger in his drug business"), *cert. denied*, —— U.S. ——, 112 S.Ct. 54, 116 L.Ed.2d 31 (1991); *United States v. Diaz–Villafane*, 874 F.2d 43, 50 (1st Cir.) (affirming upward departure where defendant had, *inter alia*, used children to deliver drugs), *cert. denied*, 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989).

In essence, we are asked to make a judgment "about whether the given circumstances, as seen from the district court's unique vantage point, are usual or unusual, ordinary or not ordinary, and to what extent." *Rivera*, 994 F.2d at 951. Given the deferential standard of review dictated for such determinations by *Rivera*, *id.* at 951–52, and given 1) the well-known relation between drugs and violence; 2) defendant's own statement that he brought his children to avoid being stopped by the police; and 3) the fact that the children were present in the apartment at the time of the drug deal, we find no error in the district court's determination

that the presence of children was relevant to its decision to depart upward.

### c. *The Reasonableness of the Departure*

As we have noted previously in examinations of the reasonableness of departures, " 'the district court's leeway is substantial.' " *Rodriguez–Cardona*, 924 F.2d at 1156 (quoting *United States v. Aguilar–Pena*, 887 F.2d 347, 350 (1st Cir.1989)). In this case, given the various factors supporting upward departure, we find no error in the district court's two-level enhancement.

## III.

### CONCLUSION

For the foregoing reasons, defendant's conviction and his sentence are both

*Affirmed.*