25 F.3d 1037
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
UNITED STATES, Appellee,
v.
Kim de los SANTOS-FERRER, Defendant, Appellant.
UNITED STATES, Appellee,
v.
Jairo Antonio TORRES-AMEZQUITA, Defendant, Appellant.
UNITED STATES, Appellee,
v.
Pedro AYALA-ROSARIO, Defendant, Appellant.
 No. 92-2476, 92-2477, 93-1060
 United States Court of Appeals,
First Circuit.
 June 6, 1994
 
 APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Juan M. Perez-Gimenez, U.S. District Judge ]
 Roxana C. Matienzo Carrion for appellant Kim De Los Santos Ferrer.
 Luis Rafael Rivera for appellant Jairo Antonio Torres Amezquita.
 Francisco Serrano Walker for appellant Pedro Ayala-Rosario.
 Antonio R. Bazan, Assistant United States Attorney, with whom Guillermo Gil, United States Attorney, and Jose A. Quiles Espinosa, Senior Litigation Counsel, were on brief for appellees.
 D. Puerto Rico
 AFFIRMED.
 Before Cyr and Stahl, Circuit Judges, and Pieras,* Senior District Judge.
 Per Curiam.
 
 
 1
 In this appeal, defendants Kim de los Santos Ferrer (Santos), Jairo Antonio Torres Amezquita (Torres) and Pedro Ayala Rosario (Ayala) challenge various aspects of their drug convictions and sentences. Finding no error, we affirm.
 
 I.
 FACTUAL BACKGROUND AND PRIOR PROCEEDINGS
 
 2
 For purposes of defendants' challenges to the sufficiency of the evidence, we begin by reciting the facts in a light most favorable to the government. See United States v. Mena-Robles, 4 F.3d 1026, 1029 (1st Cir. 1993), cert. denied, 114 S. Ct. 1550 (1994).
 
 
 3
 Confidential informant Ruben de los Santos (the CI)[1] worked on board the merchant vessel Euro-Colombia, a ship which routinely travels between Colombia and Puerto Rico. In December of 1991, the CI was approached in Cartagena, Colombia, by a Mr. Marcial who asked the CI to smuggle four kilograms of cocaine on the Euro-Colombia from Colombia to Puerto Rico. Marcial gave the CI the contraband and a phone number to call when the ship reached Puerto Rico. The phone number was later determined to be a cellular phone number assigned to Ayala.
 
 
 4
 In early January, the ship arrived in Ponce. The CI called the number and received no answer. United States Customs agents, with whom the CI was cooperating, photographed the drugs and then allowed the CI to return to Colombia with the contraband. In Colombia, Marcial asked the CI to try delivering the drugs again and gave the CI a new telephone number to call.
 
 
 5
 In February, the ship arrived at Ponce a second time. At 3:30 in the morning, the CI called the new number. The resulting conversation was taped by United States Customs officials. Santos answered the phone. The CI began by asking if Santos knew "Mr. Estela," and said that he had a "present" for Santos. Santos replied that he knew Mr. Estela. The word cocaine was not mentioned, but a price of $4000 per kilogram was agreed upon. A time and place for delivery were set. Santos said that he would arrive at 5:00 a.m. in Ponce and that he would be driving a gold Porsche. He also mentioned that he needed to raise cash for the purchase.
 
 
 6
 A second phone call was made to the same number at about 4:00 a.m., which was also taped by customs officials. This time, the CI spoke with Torres. The delivery time was moved back to 8:00 a.m. Torres stated, among other things, that he needed the time to raise money.
 
 
 7
 At 8:00 a.m., Santos and Torres showed up at the appointed delivery spot. They were riding in a Mitsubishi Mirage, not a Porsche. Ayala, the third defendant, was also with them. Santos signaled to the CI, who replied by asking what Santos wanted. Santos replied, "The 4 kilos from Colombia." The CI asked to be paid. Ayala opened the car door, Santos told the CI to get into the car, and the CI obliged. All three defendants were arrested shortly thereafter. In the car, agents discovered a car phone, with the very phone number that the CI had called, along with $3970 in cash. Torres was carrying over $500 in cash. In addition, Santos' key chain had a Porsche emblem on it. Ayala also had a beeper on his person.
 
 
 8
 All three defendants were held for several hours by customs officials without being read their Miranda warnings. During those hours, all were questioned. United States Customs Service Agent Radames Sanchez, who had taped the conversations earlier that morning,[2] then listened briefly to the questions being asked defendants in order to identify their voices. He determined that Santos' voice was the voice he heard on the tape of the first phone call, and that Torres' voice was the one he heard on the tape of the second call.
 
 
 9
 Santos and Torres were charged with using a "communication facility" in carrying out a drug transaction in violation of 21 U.S.C. Sec. 843(b) (Counts I and II). Santos, Torres and Ayala were all charged with importation, including aiding and abetting (Count III) and possession with intent to distribute (Count IV) all in violation of 21 U.S.C. Secs. 952(a) and 841(a)(1) and 18 U.S.C. Sec. 2. All pleaded not guilty. At trial, there was a hearing outside the presence of the jury to determine the admissibility of the transcripts of the phone conversations. More specifically defendants argued that the transcripts should not be admitted because each transcript identified defendants by their initials ("KS" for Santos and "JM" for Torres). The district court admitted the transcripts with the initials. All defendants were convicted on all counts, except that the third defendant, Ayala, was acquitted of the importation charge. Each defendant raises separate issues. We address them in turn.
 
 II.
 DISCUSSION
 A. Santos
 
 10
 1. The Appearance of Santos' Initials on the Transcript
 
 
 11
 Santos argues that the absence of Miranda warnings at his post-arrest detention renders unconstitutional Agent Sanchez's identification of his voice as the voice speaking on the tape. Santos goes on to argue that the appearance of his initials on the phone transcript, which was submitted to the jury, should therefore have been ruled inadmissible. We disagree.
 
 
 12
 As the Supreme Court has recently noted, the case of Miranda v. Arizona, 384 U.S. 436 (1966), does not establish "an absolute right against being compelled to speak." Doe v. United States, 487 U.S. 201, 214 n. 12 (1988). Rather, "that understanding is refuted by the Court's decision in United States v. Dionisio, 410 U.S. 1 (1973), in which the Court held that a suspect may not invoke the privilege in refusing to speak for purposes of providing a voice exemplar." Id.
 
 
 13
 In short, these cases teach that the right to remain silent does not include the right to refuse giving a voice exemplar. Thus, even if Santos had been read his Miranda rights, he had no constitutionally protected interest in keeping law enforcement officials from hearing his voice. Without a cognizable constitutional interest, Santos' effort to suppress the transcript fails.
 
 
 14
 Santos' non-constitutional challenges to the admission of the transcripts are equally fruitless. We have frequently noted that "the use of transcripts to assist the jury is committed to the sound discretion of the trial judge." United States v. Font-Ramirez, 944 F.2d 42, 48 (1st Cir. 1991), cert. denied, 112 S. Ct. 954 (1992). See also United States v. Panzardi-Lespier, 918 F.2d 313, 318-19 (1st Cir. 1990); United States v. Carbone, 798 F.2d 21, 26-27 (1st Cir. 1986); United States v. Rengifo, 789 F.2d 975, 980 (1st Cir. 1986). In this case, the district court listened to the tapes, interviewed Sanchez, and heard extensive argument from counsel, all outside the presence of the jury, before ruling on the use of the transcript. The district court satisfied itself as to Agent Sanchez's qualifications and ability to make a voice identification in this case, as well as to the authenticity and proper chain of custody of the tape and transcripts. In addition, the district court properly noted that Santos was free to argue to the jury that Sanchez's identification of the voice on the tape as that of Santos was unreliable. Defendant points to no evidence, in the record or otherwise, to suggest that any of these determinations constituted an abuse of discretion. Accordingly, we find no abuse in the district court's decision to allow use of the transcripts.
 
 2. Sufficiency of Evidence
 
 15
 Santos argues that there is insufficient evidence to support his conviction on Count III, importation of a controlled substance. As noted above, for the purpose of challenges to the sufficiency of the evidence, we review the evidence in a light most favorable to the government, drawing all inferences in favor of the verdict. See, e.g., Mena- Robles, 4 F.3d at 1031. Moreover, the evidence may be entirely circumstantial and need not exclude every reasonable hypothesis of innocence; that is, the factfinder may decide among reasonable interpretations of the evidence. See United States v. Torres-Maldonado, 14 F.3d 95, 100 (1st Cir. 1994).
 
 
 16
 When so viewed, the evidence in this case clearly supports Santos' conviction for importation. To begin with, Marcial gave Santos' number to the CI in Colombia. Santos, without more, picked up a phone call late at night, responded to code words about a delivery from "Mr. Estela," and appeared at the scene of delivery requesting "the 4 kilos from Colombia." Thus, the evidence shows an intimate knowledge of the importation scheme and a willingness to participate therein. In sum, we find this evidence sufficient to support a conviction for importation.
 
 3. Sentencing
 
 17
 Santos claims that he should be sentenced based on one kilogram of cocaine, rather than four, because $3970, the amount found in the car, could not buy four kilograms at current market rates. (In fact, $3970 will not even buy one kilogram, which the district court found to cost $15,000 and which may, in fact, cost considerably more).
 
 
 18
 We begin by noting that the facts supporting drug quantity determinations for sentencing purposes must be proven by the government by a preponderance of the evidence. United States v. Legarda, 17 F.3d 496, 499 (1st Cir. 1994). A district court's factual findings on such an issue are reviewed for clear error only. Id. We find no error in the district court's determination that Santos intended to purchase four kilograms. Marcial, the seller in Colombia, gave the CI four kilograms and promised that a buyer in Puerto Rico would purchase that amount. Santos met that expectation, specifically mentioning four kilograms to the CI just prior to his arrest, and the CI was ushered into Santos' car carrying the four kilograms. As to the low sum of money, the record does not rule out the possibility that the $3970 was merely payment to the CI for his role in the importation, and that more money would be owing to the seller through alternate means. In sum, we find no basis in the record before us for concluding that the district court's quantity determination was clear error.[3]
 
 B. Torres
 1. Sufficiency
 
 19
 Torres also challenges the sufficiency of the evidence supporting his convictions. Our standard of review is set out, supra. Like Santos' challenge, we find Torres' sufficiency challenge unavailing.
 
 
 20
 Torres answered the second phone call. He displayed intimate knowledge of the plan to meet the CI, which had been discussed in the earlier call to Santos. Torres' own participation included an attempt to raise cash. Finally, Torres appeared at the purchase carrying more than $500 in cash. Based on these facts, a reasonable jury could conclude beyond a reasonable doubt that Torres was guilty of both aiding and abetting the importation of cocaine and possession with intent to distribute.
 
 2. Sentencing
 
 21
 Torres argues that he is entitled to downward departures based on his acceptance of responsibility and his minimal participation. "Whether a defendant has accepted personal responsibility is a 'fact-dominated issue.' " United States v. Donovan, 996 F.2d 1343, 1346 (1st Cir. 1993) (quoting United States v. Royer, 895 F.2d 28, 29 (1st Cir. 1990)). A downward adjustment for minimal participation is similarly fact-dominated and is reviewed for clear error only. See United States v. Rosado-Sierra, 938 F.2d 1, 1-2 (1st Cir. 1991).
 
 
 22
 Torres' presentence report concluded that he did not demonstrate a genuine recognition or affirmative acceptance of responsibility. This characterization is buttressed by the fact that Torres went to trial on the merits of his case. See, e.g., U.S.S.G. Sec. 3E1.1, Application Note 1(h) (stating that sentencing courts should consider "the timeliness of defendant's conduct in manifesting the acceptance of responsibility."); and Application Note 2 ("This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse.").[4] In this case, we find no error in the court's factual determination that Torres did not sufficiently accept responsibility to warrant a downward departure in his sentence.
 
 
 23
 Nor do we find error in the determination that Torres was not a minimal participant. In the taped phone conversation, Torres revealed an intimate knowledge of and interest in the purchase. Moreover, he arrived at the purchase with over $500 in cash. Thus, we find no clear error in the sentencing court's determination that Torres' participation was not minimal.
 
 C. Ayala
 
 24
 In essence, Ayala challenges the sufficiency of the evidence against him by arguing that the evidence shows no more than "mere presence" at the pick-up point and that he was no more than an observer at this drug crime. The relevant standard of review is set out, supra. We conclude that Ayala's challenge to the sufficiency of the evidence meets the same fate as those of his codefendants.
 
 
 25
 As we have noted elsewhere, "the factfinder may fairly infer ... that it runs counter to human experience to suppose that criminal conspirators would welcome innocent nonparticipants as witnesses to their crimes." United States v. Batista-Polanco, 927 F.2d 14, 18 (1st Cir. 1991). Moreover, "the culpability of a defendant's presence hinges upon whether the circumstances fairly imply participatory involvement. In other words, a defendant's 'mere presence' argument will fail in situations where the 'mere' is lacking." United States v. Echeverri, 982 F.2d 675, 678 (1st Cir. 1993). Viewed through this lens, the record in this case clearly supports Ayala's conviction.
 
 
 26
 To begin with, Ayala's phone number was first given to the CI in January. Though he was never directly reached by phone on that trip, Ayala did show up at the February purchase. These facts allow an inference that Ayala was involved with this drug scheme from the beginning. Moreover, Ayala, like his codefendants, lives in the Carolina area of Puerto Rico, which is over an hour from Ponce, where he appeared early on the morning of the purchase.
 
 
 27
 In addition, Ayala had a beeper, a typical drug trade item, on his person when he was arrested. Phone records show that a call was placed from Santos' phone to a beeper service at 4:30 a.m. on the morning of the drug deal. Though there is apparently no record evidence that Ayala was paged that night, Ayala conceded at oral argument that the call from Santos' phone went to the very beeper service that Ayala used. Finally, once at the scene, Ayala opened the car door to allow the CI to enter the car with four kilograms of cocaine. Based on all of this evidence, a jury could conclude beyond a reasonable doubt that Ayala was guilty of aiding and abetting possession with intent to distribute cocaine.
 
 
 28
 We have carefully considered all other aspects of defendants' arguments and find them to be without merit.
 
 III.
 CONCLUSION
 
 29
 For the foregoing reasons, the convictions and sentences of all defendants are
 
 
 30
 Affirmed.
 
 
 
 *Of the District of Puerto Rico, sitting by designation.
 
 
 [1]
 The CI is no relation to defendant Kim de los Santos
 
 
 [2]
 Santos argues in his brief that Agent Sanchez was not present when the conversations were recorded. Sanchez testified that he actually taped the two phone conversations at issue
 
 
 [3]
 Santos also argues that, because the cash on hand could not purchase four kilograms of cocaine at current rates, he should have been charged with the "lesser included offense" of attempting to import just one kilogram of cocaine. A lesser included offense is one which is "composed of some, but not all elements of a greater offense and which does not have any element not included in [the] greater offense." Black's Law Dictionary, 902 (6th ed. 1990). For example, a lesser included offense of possession with intent to distribute would be simple possession. A mere lower amount of drugs, however, does not amount to a "lesser included offense."
 In this case, the district court, upon being requested to instruct on a lesser included offense, asked Santos if he was requesting an instruction on simple possession. Santos replied in the negative. Accordingly, we deem this issue waived. Moreover, we see no error in the district court's refusal to instruct on a lesser included offense based solely on a lower amount of drugs.
 
 
 [4]
 Even now, Torres argues that there is insufficient evidence to support his convictions, while he also claims that he has accepted responsibility